**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Kenneth John CROUCHER,**
**Defendant-Appellant.**

No. 75–3315.

United States Court of Appeals,
Fifth Circuit.

June 7, 1976.

Harry Tom Petersen, Malcolm McGregor, El Paso, Tex., for defendant-appellant.

John Clark, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and TJOFLAT, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant was convicted by a jury of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963, and was sentenced to five years' imprisonment with a ten-year special parole term. Because we find that the district court improperly restricted the defense's cross-examination of a key government witness, we reverse appellant's conviction and remand for a new trial.

Before reaching the Sixth Amendment right of confrontation issue, however, we must first consider two contentions raised by appellant which bear on the government's right to retry him following this reversal. First, appellant asserts that the trial below violated the double jeopardy clause because of his previous trial and conviction on another conspiracy to import marijuana charge, and secondly, he argues that the government violated his Fifth Amendment due process rights by delaying prosecution of the instant charge for nearly two years following the offense.

### I. Double Jeopardy.

Appellant's double jeopardy argument arises from the fact that, prior to his indictment in the instant case, he was indicted, tried, and convicted on a charge of conspiracy to import marijuana stemming from a series of events beginning in early July 1973 and concluding in mid-October of that year. Appellant contends that the same narcotics operation was the subject of both the earlier prosecution and the one at hand, and that consequently his trial below violated the double jeopardy clause of the Fifth Amendment.[1]

Upon examination of the record, we find this argument to be without merit. Testimony at trial in the case at hand revealed that the events leading to the instant conspiracy to import charge against appellant commenced on March 23, 1973, when appellant, accompanied by Tony Baldi and Larry Bracher, met with a government informant, one Terrance Kirkendall, in El Paso, Texas, and appellant informed Kirkendall that he and several others were flying in narcotics from Mexico. Once the planeloads of drugs had landed, the normal procedure was then to transport the narcotics by trucks to more distant destinations. After reporting this conversation to a federal agent and the local sheriff, Kirkendall initiated negotiations with appellant and another individual, George Taylor, for the purchase of 500 kilos or more of marijuana. On March 29, 1973, Kirkendall took Special Agents Jerry Rice and Albert Castro, who posed as potential

---

1. This argument was presented to the district court and was rejected, thus avoiding any question of waiver of the issue on appeal.

narcotics buyers, to meet with appellant; at that time a purchase price of $80 per pound was agreed upon. The following day, appellant took Kirkendall, Rice, and Castro to meet with the "boss-man" running the narcotics operation, to receive the final go-ahead on the deal. At that meeting, Rice and Castro were introduced to Taylor, and a marijuana transaction of about 2,000 pounds was discussed. On March 31st, appellant informed Kirkendall that the whole deal had been turned over to him and it was likely that the transaction could be consummated within a few days. Similar conversations ensued during the next few days, but after April 2nd Kirkendall heard nothing further from appellant or any of his friends for about ten days. On April 12th, appellant and Taylor met with Kirkendall and informed him that the deal was set for April 14th and to notify the buyers to be in Albuquerque, New Mexico, on the morning of the 14th. Finally, on the evening of the 13th, however, Kirkendall received a telephone call from appellant, informing him that the deal was off and that he never wanted to see Kirkendall or the buyers again.

The events underlying appellant's previous conspiracy to import conviction, on the other hand, are entirely distinct and separate from the facts just outlined. The facts of that case begin with the purchase of a plane by one Martin Willard Houltin in El Paso, Texas, on July 7, 1973, and terminate on October 12 and 13, 1973, with the arrest of appellant and five other individuals, none of whom is involved in the instant case, in New Mexico, with over 2200 pounds of marijuana. Thus, the evidence clearly demonstrates the existence of two distinct conspiracies, separated in time and participants, and constituting two different offenses for which appellant could be tried without violating the double jeopardy clause. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1187, 25 L.Ed.2d 469 (1970).

We also find meritless appellant's contention that the indictment was duplicitous and at variance with the evidence. The evidence clearly showed that the three separate agreements alleged in the single-count indictment were part of a single conspiracy to import marijuana.

## II. Alleged Prosecutorial Delay.

Appellant also argues that a delay of one year and eight months from the commission of the offense until his indictment violated his Fifth Amendment due process rights. We have examined the record and briefs carefully, however, and have found neither a showing of intentional prosecutorial delay on the part of the government, nor actual prejudice to the conduct of the defense. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). As the Supreme Court observed in *Marion*, the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient in itself to give rise to a due process violation where, as here, the prosecution is brought within the applicable statute of limitations period. *Id.* at 325–26, 92 S.Ct. at 466, 30 L.Ed.2d at 482.

## III. The Sixth Amendment Right of Confrontation.

We now turn our attention to the district court's allegedly improper restriction of the scope of the defense's cross-examination of Kirkendall, the government informer. At trial, Kirkendall was a key witness for the prosecution, and appellant's attorney sought unsuccessfully to persuade the district court to permit him to cross-examine Kirkendall concerning his criminal record. The record before us reveals that Kirkendall had a lengthy history of both state and federal theft and burglary arrests, none of which, however, had resulted in conviction. On *voir dire* examination, out of the jury's presence, Kirkendall admitted that his cooperation with and employment by local state and federal law enforcement officials began in 1971 as a result of dismissal of certain state theft and burglary charges filed against him in November 1971. According to him, his "debt" to the state had been "worked off" by December 1972. The record before us, however, reveals that

Kirkendall was charged with a federal offense, carrying a prohibited weapon, on October 20, 1973; his state rap sheet bears the corresponding entry "Trans to Co; Chgs Dropped and Rel 10/23/73." Both of these dates are subsequent to the termination of the conspiracy alleged to have occurred in the instant case, but prior to appellant's indictment in December 1974 and trial in June 1975.

The district court refused to permit the defense, in cross-examining Kirkendall, to inquire into anything other than prior convictions of felonies or of misdemeanors involving moral turpitude, and prohibited *any* questioning as to arrests occurring following the termination in April 1973 of the conspiracy in which appellant and Kirkendall were allegedly involved. Since Kirkendall's record contained no such felony or misdemeanor convictions, it seems fairly clear that the jury was left without any evidence that Kirkendall was very vulnerable to pressures by the prosecution at the time he gave his testimony. On direct examination by the government's attorney, Kirkendall stated he was "under no obligation" either to state or to federal officials at the time he was working as an informer in the instant case. Furthermore, there was no indication from any of his testimony that he had ever worked for law enforcement officials for motives which were other than monetary (the nature of his fee arrangement with the government was brought out on cross-examination.)

■ It is thus clear that appellant's attorney was effectively prevented from inquiring into criminal events in Kirkendall's past which could well have demonstrated the existence of a basis for his giving biased testimony. Despite his assertion on *voir dire* that he had "worked off" his "debt to society" as of December 1972, at the time Kirkendall testified at trial there were criminal incidents in his recent past of which law enforcement officials were aware

and for which he could have been indicted or reindicted, since the applicable statutes had not run.[2]

We think that, under the circumstances of this case, the district court erred in prohibiting defense counsel from questioning Kirkendall on his record of past arrests, which had occurred prior to trial, regardless of their timing with respect to the events in the alleged conspiracy. This conclusion is supported by a recent Supreme Court decision, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis* the Court reviewed a burglary and grand larceny conviction resulting from a trial in which the defense had been prohibited from questioning a key prosecution witness concerning his adjudication as a juvenile delinquent and his status as a probationer at the time of the events as to which he was to testify. Noting that the Sixth Amendment's confrontation clause has consistently been construed to secure the right of cross-examination, the Court observed that one way to attack a witness' credibility on cross-examination is to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities at the case at hand." 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354. Given this fact, the Court concluded that the claim of bias sought to be developed by the defense was admissible "to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer . . . as well as of [his] possible concern that he might be a suspect in the investigation." *Id.* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 354.

The reasoning utilized by the Court in *Davis* is similarly applicable here. The issue of the nature of Kirkendall's relationship with both state and federal law enforcement officials, in connection with his participation in this case, was highly relevant to his credibility as a witness for the

2. The record shows, for example, that on August 31, 1970, Kirkendall was arrested and booked by both state and federal law enforcement officials for two counts of burglary in El Paso, Texas. Kirkendall's rap sheets do not indicate, however, what disposition was formally made of these charges, and, when questioned on *voir dire* concerning them, he stated that as far as he knew the charges could possibly still be pending.

prosecution. Given this fact, we conclude that the jury was entitled to have placed before it the defense's theory of Kirkendall's bias and prejudice stemming from criminal charges which could still be pursued against him. *Davis v. Alaska, supra; United States v. DeLeon*, 498 F.2d 1327 (7th Cir. 1974).[3]

We have considered appellant's remaining allegations of error pertaining to the conduct of the trial, but find it unnecessary to pass on them in light of our disposition of the case. The judgment of conviction is REVERSED and the case REMANDED to the district court for further proceedings not inconsistent with this opinion.

---

**3.** In *DeLeon*, the Seventh Circuit held that evidence showing that less than a month prior to the sale of cocaine at issue a government witness had been involved as a broker in a sale of marijuana, for which sale he had not been prosecuted, was admissible on cross-examination of the witness to show bias. The court stated that in such a situation, the crime, the government's knowledge, the lack of prosecution, and any promises that may have been made are relevant to the bias theory and may be inquired into on cross-examination. 498 F.2d at 1333.