**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph BENAVIDEZ and Abel Tavarez, Defendants-Appellants.**

**No. 81-1041.**

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1982.

---

Levey & Goldstein, Gerald H. Goldstein, Mark Stevens, San Antonio, Tex., for defendants-appellants.

David K. Chapman, San Antonio, Tex., for Abel Tavarez.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Appellants Ralph Benavidez and Abel Tavarez were convicted, along with Charles Luna, of conspiring to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a). In addition, the two appellants were each convicted on two substantive counts involving Schedule I Narcotic Drug Controlled Substances. *See* 21 U.S.C. § 841(a), (b)(1)(A). They appeal, arguing that the trial court's failure to comply with new Rule 44(c) of the Federal Rules of Criminal Procedure requires reversal, that the attorney who represented both of them labored under an "actual conflict of interest," and that the trial court's refusal to allow them to cross-examine a government informant-witness on a pending state criminal charge violated their right to confront the witness. Appellant Tavarez also argues that the prosecutor made an improper comment on his failure to testify. We reject these contentions and affirm.

## I. *Facts* [1]

Appellants' convictions on the substantive counts were based on three purchases of drugs by government agents and informants.

On May 9, 1979, codefendant Luna sold a small quantity of heroin to DEA agent Milton Shoquist. The sale was arranged with the aid of an informant, Roger Jones. Luna obtained the heroin from appellant Tavarez immediately before the sale. Tavarez was convicted of distributing heroin

[1] In this statement of facts, we view the evidence, as we must, in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680

under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On August 28, 1979, Luna sold a small quantity of monoacetylmorphine—like heroin, a Schedule I Narcotic Drug Controlled Substance—to agent Shoquist. Once again, Jones helped Shoquist carry out the transaction. This time, however, Luna obtained the narcotic from appellant Benavidez at Benavidez' father's house immediately before the sale. Benavidez was convicted of distribution.

After these first two transactions, Jones dropped out of the DEA's investigation, and the agency attempted to set up another purchase using different agents and informants. On June 9, 1980, Tavarez sold a small quantity of heroin to Juan Salas, a former heroin addict working as a DEA informant. Tavarez obtained the heroin from Benavidez immediately before making the sale. Both Tavarez and Benavidez were convicted of possession with intent to distribute.

The evidence establishing the conspiracy included Jones' testimony concerning meetings he had with Luna, Tavarez, and Benavidez and Luna's out-of-court identification of Benavidez and Tavarez as his source of heroin to Shoquist.

Both appellants were represented by the same attorney at trial. Each has retained separate counsel on this appeal.

## II. *Rule 44(c)*

On December 1, 1980, the first day of the trial, Tavarez' counsel moved, at Tavarez' request, to withdraw from the case and to have Benavidez' counsel represent both defendants. That same day, new Rule 44(c) went into effect:

Whenever two or more defendants ... are represented by the same retained or assigned counsel ... the court shall promptly inquire with respect to such joint representation and *shall personally advise each defendant of his right to the*

(1942). Neither appellant challenges the sufficiency of the evidence to sustain the convictions.

*effective assistance of counsel, including separate representation.* Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c) (emphasis added).

The trial court did inquire concerning the joint representation in this case. The court asked Tavarez' counsel and Benavidez' counsel whether they saw any potential conflict; they replied that they saw none. Benavidez' counsel explained that there was no conflict because "both Defendants contend that [the crimes] in fact did not happen." The court then ascertained that Benavidez' counsel had discussed the matter with both Benavidez and Tavarez. Finally, he asked Benavidez and Tavarez individually whether either had any objection to the joint representation; each responded negatively.

■ Despite this inquiry, however, it is clear that the trial court did not fully comply with Rule 44(c), because it did not "personally advise" either appellant of his rights as required by the Rule. Appellants argue that the mandatory language of the Rule makes this failure reversible error. We disagree and hold that the trial court's failure to comply with the Rule is not in itself grounds for reversal.

■ The question presented is not one of constitutional dimension; when a trial court has no reason to believe that a conflict exists, its failure to inquire concerning the propriety of joint representation or to advise a criminal defendant of his right to conflict-free representation is not in itself a denial of his constitutional rights. *See Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717 (1980); *United States v. Boudreaux*, 502 F.2d 557, 558 (5th Cir.

1974). The question is whether failure to comply with a rule of criminal procedure requires reversal. The answer lies in the purpose of Rule 44(c).

Rule 44(c) was adopted to "establish[ ] a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." Advisory Committee Notes, 77 F.R.D. 507, 594 (1978). The rule is thus intended as a prophylactic; compliance with its terms, it is hoped, will reduce the number of cases in which we are faced with appeals, such as this one, by defendants who desired joint representation at the time of trial, but who claim on appeal that such representation was not in their best interests.

The requirements of the rule are designed to advance its prophylactic purpose: the inquiry by the court will help to identify any potential conflict raised by joint representation so that the court can carry out its duty to "take such measures as may be appropriate to protect each defendant's right to counsel," Fed.R.Crim.P. 44(c); personally advising the defendants of their rights will increase the likelihood that any waiver of conflict-free counsel will be a voluntary, knowing, and intelligent one. *See* 77 F.R.D. at 597, 599–600; *cf. United States v. Lawriw*, 568 F.2d 98, 104 (8th Cir. 1977) (explaining purposes of that circuit's supervisory rule, a precursor to Rule 44(c)), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).[2] But neither the inquiry nor the advice is itself the goal of the rule; that goal is preventing conflicts. If there is no actual conflict, then the rule's purpose will not be served by reversal of a conviction. The Advisory Committee could not

2. We have no occasion in this case to decide whether compliance with Rule 44(c) would in itself constitute a voluntary, knowing, and intelligent waiver of the right to conflict-free counsel. The Advisory Committee Notes indicate, however, that Rule 44(c) is intended as a complement to, not a substitute for, this circuit's requirements for a valid waiver in *United*

*States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975) (disqualification motion), as applied in *United States v. Alvarez*, 580 F.2d 1251, 1260 (5th Cir. 1978). *See* 77 F.R.D. at 600–01. In this case, the trial court complied neither with *Garcia* nor with Rule 44(c); thus, it is clear that the appellants did not waive their right to conflict-free counsel.

have made this more clear: "The failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant." 77 F.R.D. at 603.

Thus, we think that it would be a distortion of the purpose of Rule 44(c) to hold that failure to comply with the rule is in itself reversible error without requiring any showing that defendant has been denied the Sixth Amendment right that the rule was designed to protect. We hold that, even if the trial court fails to comply fully with the mandates of Rule 44(c), a defendant must still demonstrate an "actual conflict of interest" before we will reverse his conviction.

## III. *Actual Conflict*

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718. The defendant does not have to demonstrate prejudice from the joint representation;[3] but he must "show[ ] that his counsel actively represented conflicting interests." *Id.* at 350, 100 S.Ct. at 1719.

In this case, appellants seek an unprecedented application of the "actual conflict" rule. All of our previous cases granting relief on grounds of actual conflict have involved one or more of the following situations: (1) the conflict was brought to the trial court's attention at the outset of the trial or at the time when the conflict first became apparent;[4] (2) one defendant had evidence that would have exculpated himself but inculpated a codefendant;[5] (3) the prosecution's evidence offered defendant a theory under which he could prove his own innocence by proving his codefendant's guilt.[6]

This case involves none of these situations. No hint of conflict was ever brought to the trial court's attention. At the outset of the trial, both appellants joined in the united "it didn't happen" strategy; neither argues that counsel had any reason to be-

---

3. *See Baty v. Balkcom*, 661 F.2d 391, 396 (5th Cir. 1981) ("adversely affected" language in *Cuyler* does not alter this Circuit's "actual conflict" standard).

4. *See, e. g., Johnson v. Hopper*, 639 F.2d 236 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981); *United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *Brooks v. Hopper*, 597 F.2d 57 (5th Cir. 1979); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1981); *Gravitt v. United States*, 523 F.2d 1211, 1217 (5th Cir. 1975). *See also Glasser v. United States*, 315 U.S. 60, 68–76, 62 S.Ct. 457, 464–68, 86 L.Ed. 680 (1942).

5. *See, e. g., Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981); *Turnquest v. Wainwright*, 651 F.2d 331, 332 (5th Cir. 1981); *Johnson v. Hopper*, 639 F.2d 236 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981); *Brooks v. Hopper*, 597 F.2d 57 (5th Cir. 1979). *See also Cuyler v. Sullivan*, 446 U.S. at 337–41, 100 S.Ct. at 1712–14 (claim that attorney decided not to submit evidence in defense in order to protect codefendants).

6. *See Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir. 1975) (prosecution's own medical evidence indicated that defendant's joint acts with codefendants were not cause of murder vic-

tim's death, but that one codefendant's separate act was).

A related line of cases involves not representation of codefendants, but representation of a single defendant as well as another client whose interest in the outcome of the criminal trial conflicts with defendant's. In such cases, the conflict is necessarily apparent to the defendant's attorney at the outset of the trial. *See, e. g., United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980) (attorney had to cross-examine former client who had been indicted for same drug transactions), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1981) (same); *Stephens v. United States*, 595 F.2d 1066 (5th Cir. 1979) (same); *Zuck v. Alabama*, 588 F.2d 436, 438 (5th Cir.) (defendant's attorney represented prosecutor in unrelated civil matter, and trial court was fully aware of conflict), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *Castillo v. Estelle*, 504 F.2d 1243 (5th Cir. 1974) (defendant's attorney was actively representing prosecutor's principal witness in unrelated civil litigation); *Porter v. United States*, 298 F.2d 461 (5th Cir. 1962) (defendant's attorney was representing officer, whom defendant claimed entrapped him, in a police department disciplinary proceeding).

lieve at the outset that the united strategy was not in his best interests, or even that counsel had any reason to believe at that time that a plausible alternative strategy was available.[7] Nor does either claim that he could have offered any evidence, or that the government offered any evidence, in support of an alternative strategy.

Instead, each argues that the prosecutor's evidence against his codefendant was stronger than the evidence against himself. Faced with such evidence, each argues, his defense counsel should have adopted a strategy of "shifting the blame" to his codefendant and emphasizing the relative weakness of the case against himself. Each invokes our often-stated test from *Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir. 1972): "A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Id.* at 1076, *quoted in Turnquest v. Wainwright*, 651 F.2d 331, 333 (5th Cir. 1981). Since joint counsel was not free to advance the argument that the other defendant was the guiltier party, each argues, she actively represented conflicting interests under the *Foxworth* test.

Taken to its limit, appellants' argument would necessitate a *per se* rule requiring separate representation: every time a lawyer represents more than one defendant, he is precluded from "shifting the blame"

to the client against whom the government presents the stronger case. It has long been settled, however, that joint representation is not unconstitutional *per se*. *See Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978); *Foxworth v. Wainwright*, 516 F.2d at 1076. And it has long been recognized that " '[j]oint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack.' " *Holloway v. Arkansas*, 435 U.S. at 482–83, 98 S.Ct. at 1178, 55 L.Ed.2d 426 (quoting *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting)).

Thus, we doubt that there can be a constitutional violation when the only claim of conflict is that a defendant should have abandoned the common defense and invited reciprocal recrimination, not because the government introduced evidence indicating the defendant's innocence,[8] but solely because the government made a stronger case against his codefendant. We have routinely rejected claims that defense counsel needed to be free to abandon a "united front" strategy. *See, e. g., United States v. Medel*, 592 F.2d 1305, 1312 (5th Cir. 1979); *Canal Zone v. Hodges*, 589 F.2d 207, 210 (5th Cir.), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). The claims of conflict here are based entirely on appellate counsel's theories—developed with the benefit of the entire record—on what each

---

7. *Cf. United States v. Burroughs*, 650 F.2d 595, 598 (5th Cir. 1981) ("the attorney representing both defendants is in the best position, professionally and ethically, to evaluate when a conflict exists or is likely to develop during the trial").

8. *See, e. g., Foxworth v. Wainwright*, 516 F.2d at 1074–75 (prosecution's medical evidence was that death was not caused by defendants' joint act, but by act of single codefendant). The closest either appellant comes to evidence that might have been helpful in shifting the blame is a prior inconsistent statement pointed out by Benavidez. Before the grand jury, the DEA case agent testified that, immediately before Luna consummated the August 28, 1979 transaction, Luna went to Tavarez' father's house. At trial, the agent testified that it was

Benavidez' father's house. Benavidez argues that conflict-free trial counsel could have used this inconsistency to shift the blame to Tavarez. This argument, however, is not supported by the record. The crucial evidence concerning the August 28 transaction was not that Luna went to Benavidez' father's house, but that the case agent and another surveillance agent witnessed a meeting between Luna and Benavidez outside the house. Moreover, the attribution of ownership of the house to Tavarez' father before the grand jury was apparently a simple misstatement; since the grand jury indicted Benavidez, not Tavarez, for the August 28 transaction, it is clear that the DEA agent was not accusing Tavarez of the crime before the grand jury.

defendant's most effective response to the government's evidence would have been. If actual conflict can be established on this basis, it will be a rare case in which an untested strategy will not look better than an unsuccessful one.

■ Even if a constitutional violation could be proved in this manner, neither defendant has demonstrated an actual conflict because neither has shown that he stood "to gain significantly" by abandoning the common defense. *Foxworth*, 516 F.2d at 1076; *see United States v. Risi*, 603 F.2d 1193, 1195 (5th Cir. 1979) ("There must be a *significant* divergence in the interests of the jointly represented persons.") (emphasis added).

In evaluating appellants' claims of conflict, we look both to the specific evidence of conflict and to the proceedings as a whole. *See United States v. Medel*, 592 F.2d 1305, 1312 (5th Cir. 1979).

Appellant Benavidez argues that the case against Tavarez was stronger because informant Jones' testimony placed Benavidez at fewer meetings of the co-conspirators than Tavarez; [9] and because the case against him consisted almost entirely of circumstantial and hearsay evidence, while there was direct evidence that Tavarez made a transfer of heroin to informant Salas and a tape recording of an incriminating phone conversation between Tavarez and Salas. We do not think that this additional proof of Tavarez' guilt created an actual conflict. Benavidez does not dispute that the evidence against him was sufficient to convict. The additional proof of Tavarez' guilt in no way tends to prove Benavidez' innocence. We do not think that Benavidez stood to gain significantly by abandoning the common defense in this case.

Benavidez also argues that, because of the direct evidence against Tavarez, trial counsel was unable to present a plausible defense for him. He claims that, after all the evidence was in, trial counsel changed her defense theory and argued entrapment "throughout" her summation. Benavidez argues that entrapment was the only defense available to Tavarez, but was not available to Benavidez because of his minimal contacts with government informants. A review of the record reveals, however, that counsel did not argue entrapment "throughout" her summation: her argument on summation was consistent with her trial strategy of attacking the credibility and consistency of the government's case and arguing that there was a reasonable doubt whether appellants were guilty as charged. Moreover, while entrapment was an important, though far from dominant, part of counsel's summation, she did not base her entrapment argument on any specific evidence that the government's agents and informants had induced the defendants' conduct, but rather on the premise that the government had failed to prove predisposition beyond a reasonable doubt. Thus, Benavidez' minimal contacts with the government agents and informants may well have put him in a better position on the entrap-

---

**9.** Jones testified to several meetings with Benavidez at which drug transactions were discussed. Jones testified that he met with Benavidez, Tavarez, and Luna in April 1979, that he met again with all three in May or June of 1979, that he spoke with Benavidez and Luna concerning a heroin transaction in June 1979, and that he met with Benavidez and Luna in September 1979 to discuss the August 28 transaction. Benavidez quotes from an exchange between defense counsel and Jones occurring after Jones had testified to the two meetings at which both Benavidez and Tavarez were present:

Q. And at these other meetings you held, either Mr. Tavarez was not there or Mr. Benevidez [*sic*] was not there?

A. Yes, Ma'am.

Benavidez argues that the "either/or" approach was not helpful to him or Tavarez, and implies that the question should have been asked to establish that Mr. Benavidez was not at the "other meetings." The answer to such a question, however, would have been that Benavidez *did* have other meetings and discussions with Jones. Such an approach would simply have given Jones an opportunity to repeat his earlier allegations against Benavidez. Thus, the affirmative response to the "either/or" question may well have been the best testimony defense counsel could elicit, since it might tend to cast doubt on the existence of a continuing conspiracy among all three conspirators. Benavidez' argument amounts to little more than a mischaracterization of the evidence against him combined with a tactical second-guess.

ment defense than Tavarez, since these witnesses were not in as good a position to testify concerning Benavidez' predisposition.

Tavarez does not point to any specific argument that counsel was precluded from making or to any specific evidence that counsel was precluded from adducing on his behalf, and in reviewing the record we have discerned none. We find no basis for his conclusory contention that Benavidez was "the guiltier party."

Therefore, we reject appellants' claims that they were denied the effective assistance of conflict-free counsel.

### IV. *Right of Confrontation*

During informant Jones' testimony, the trial court heard the government's motion *in limine* to prevent the defendants from impeaching Jones' credibility with two remote convictions and an arrest occurring in September 1980, after defendants' indictment and only two months before their trial. The court granted the government's motion. Appellants' sole complaint concerns the 1980 arrest.

On *voir dire* examination, Jones testified that he had been arrested by Florida state authorities on a charge of "felony theft." Jones further testified that the charges were "scheduled" to be dismissed for lack of prosecution, and that he had not received and did not expect any assistance from the DEA concerning the state charges.[10] Appellants do not dispute that the DEA gave Jones no assistance, but they argue that they had a Sixth Amendment right to use the arrest to demonstrate that Jones' moti-

vation for testifying was the hope that cooperation with the government would facilitate the favorable disposition of the state charges.

We find this case indistinguishable from our recent decision in *United States v. Hawkins*, 661 F.2d 436 (5th Cir. 1981). In *Hawkins*, the trial court refused to permit the defendants to question two witnesses—co-conspirators who had agreed to cooperate with the government—about two post-indictment arrests by foreign authorities. We held that the trial court's ruling was within its discretion to limit the scope of cross-examination, and we rejected a confrontation clause challenge because "[t]here was no evidence the Government assisted the pair in any way with their release on the foreign charges" and because the witnesses "had agreed to testify for the Government against defendants well before these foreign arrests." *Id.* at 444. So, too, with informant Jones.[11]

The appellants took full opportunity to question Jones about other crimes, including his use of drugs and his illegal carrying of a firearm, and to argue to the jury that Jones' motivation for testifying was to protect himself from prosecution. Appellants further attacked Jones' motives by pointing out that he had been well paid for his work by the DEA. We conclude that the trial court's ruling on the arrest did not impermissibly interfere with appellants' right of confrontation.[12]

### V. *Comment on Tavarez' Failure to Testify*

At trial, the government introduced a taped recording of a telephone conversation

---

**10.** Jones testified that he had asked a DEA agent to call Florida "to find out something" about the case, but that no one had ever returned the agent's call.

**11.** The only possible distinction of *Hawkins* is that the *Hawkins* witnesses had already been released on the foreign charges at the time of trial, while the Florida charge against Jones was still pending. Jones testified, however, that the Florida charges were being dismissed.

**12.** Appellants argue that a Sixth Amendment right to question a witness about pending charges is established by *United States v. Croucher*, 532 F.2d 1042 (5th Cir. 1976). *Croucher*, however, establishes no such abso-

lute right. We limited our holding in *Croucher* to "the circumstances of th[e] case." *Id.* at 1045. Those circumstances including a pending *federal* charge filed against the witness *prior* to the defendant's indictment, and an admitted prior course of government assistance in dismissing charges against the witness. Under those circumstances, we held, there was a basis for questioning the witness concerning his possible hope of government assistance. *See Mills v. Estelle*, 552 F.2d 119, 122 (5th Cir.) (explaining *Croucher* as a case in which the federal charges gave the United States "leverage" over the witness), *cert. denied*, 434 U.S. 871, 98 S.Ct.

between Tavarez and government informant Salas in which Salas used the Spanish word "jale." Expert testimony established that "jale" is commonly used to mean "heroin." In reviewing the tape on summation, the prosecutor pointed out that "[Salas] mentions 'jale' and you didn't hear Mr. Tavarez over here say 'Jale, what are you talking about?'"

Tavarez argues that when the prosecutor said "over here," he was making a reference to Tavarez' failure to testify.

A prosecutor's argument will be deemed a reference to a defendant's failure to testify if (1) such comment is the prosecutor's "manifest intent," or (2) it is of such character "that the jury would naturally and necessarily" interpret the comment as such. *United States v. Jones,* 648 F.2d 215, 218 (5th Cir. 1981). The trial judge concluded and instructed the jury that the prosecutor's comment referred to Tavarez' participation in the phone conversation. We see no error in this conclusion.

AFFIRMED.

214, 54 L.Ed.2d 149 (1977). The leverage the prosecution had over the witness in *Croucher* is simply not present here.

