DANIEL S. PEARSON, Judge.
Joe Washington and Ulysses Thompson, charged and convicted of robbery, contend that they were denied the effective assistance of counsel because a single lawyer was appointed to jointly represent them. Neither Washington nor Thompson objected to the joint representation or requested the appointment of separate counsel.[1] Since representation of joint defendants by one lawyer is not per se unconstitutional, see Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Belton v. State, 217 So.2d 97 (Fla.1968), and dual representation does not in itself trigger the need for inquiry as to possible conflict by the trial court, Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the only arguable ground for reversal is that the record reveals that counsel for these defendants had an actual conflict of interest, so that either or both of them was prejudiced by the failure of the court, sua sponte, to appoint a separate lawyer for each.[2], [3] Cuyler v. Sullivan, supra; State v. *1101 Youngblood, 217 So.2d 98 (Fla.1968); Belton v. State, supra.
Does the record reveal an actual conflict of interest? Mr. Pilón, the alleged victim of the crime, testified that both defendants robbed him of a watch and some money. Within minutes of the robbery, the defendants were found in front of the Gibson Hotel, across the street from the scene of the crime. Pilón identified both men as the perpetrators. The defendants were arrested and searched. Pilon’s watch was found in Thompson’s sock; Pilon’s personal papers and bus ticket were found crammed in a crevice between a traffic box and wall next to where Washington was standing when arrested.
Both defendants testified. Washington stated that he did not know Thompson, but had seen him several times. He denied having anything to do with the robbery of Pilón. He stated that he was simply standing on the corner near the Gibson Hotel when arrested. Thompson testified that he too was simply on the same corner when he was arrested. He denied any participation in the robbery of Pilón. He said that while on his way to the Gibson, he bought the watch from strangers for $5.00, and when he became involved in some horseplay, he put the watch in his sock lest it be broken. He denied knowing Washington.
Thompson, unable to point to any specific prejudice to him, argues that prejudice is inherent in any joint representation.[4] Washington points to specific prejudice. He says the evidence proving his guilt was weaker than the evidence proving Thompson’s guilt: none of the victim's property was found on Washington’s person, and, although Pilón was unwavering in the certainty of his identification of both defendants, Pilón did concede that he did not get a good look at Washington when the crime occurred. Washington asserts that because he had the same counsel as Thompson, the relative weakness of the case against Washington was never emphasized either at trial or at sentencing.[5]
*1102 Thompson’s argument is, of course, no more than an argument for a per se rule against joint representation, which, as we have said, is not compelled by the United States Constitution, see Cuyler v. Sullivan, supra; Holloway v. Arkansas, supra; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942),[6] and is not the rule in Florida, see State v. Youngblood, supra; Belton v. State, supra.[7] Washington’s argument falls short because a disparity in the quantum of evidence establishing guilt does not itself create a conflict of interest, see, e.g., United States v. Benavidez, 664 F.2d 1255 (5th Cir. 1982); United States ex rel. McClindon v. Warden, Illinois State Penitentiary, 575 F.2d 108 (7th Cir.), cert. denied, 439 U.S. 856, 99 S.Ct. 170, 58 L.Ed.2d 163 (1978); United States ex rel. Ross v. LaVallee, 448 F.2d 552 (2d Cir. 1971); United States v. Gallagher, 437 F.2d 1191 (7th Cir.), cert. denied, 402 U.S. 1009, 91 S.Ct. 2190, 29 L.Ed.2d 430 (1971). As the Fifth Circuit so recently stated in United States v. Benavidez:
“Thus, we doubt that there can be a constitutional violation when the only claim of conflict is that a defendant should have abandoned the common defense and invited reciprocal recrimination, not because the government introduced evidence indicating the defendant’s innocence, but solely because the government made a stronger case against his eodefendant. We have routinely rejected claims that defense counsel needed to be free to abandon a ‘united front’ strategy. See, e.g., United States v. Medel, 592 F.2d 1305, 1312 (5th Cir. 1979); Canal Zone v. Hodges, 589 F.2d 207, 210 (5th Cir.), cert. denied, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). The claims of conflict here are based entirely on appellate counsel’s theories — developed with the benefit of the entire record — on what each defendant’s most effective response to the government’s evidence would have been. If actual conflict can be established on this basis, it will be a rare case in which an untested strategy will not look better than an unsuccessful one.
*1103 “Even if a constitutional violation could be proved in this manner, neither defendant has demonstrated an actual conflict because neither has shown that he stood ‘to gain significantly’ by abandoning the common defense. Foxworth [v. Wainwright], 516 F.2d [1072] at 1076 [5th Cir. 1972]; see United States v. Risi, 603 F.2d 1193, 1195 (5th Cir. 1979) (‘There must be a significant divergence in the interests of the jointly represented persons.’) (emphasis added).”[8] 664 F.2d at 1260-61 (footnote omitted).
We do not foreclose the possibility, however remote, that the defendants, or one of them, can in a collateral proceeding establish a claim that the joint representation created an actual conflict of interest. But no actual conflict of interest appears in the record before us, and, accordingly, we affirm the convictions.
Affirmed.

. Two days before trial, Washington, joined by Thompson, advised the court that the defendants did not want the attorney whom the court had appointed “because we don’t feel he know enough about our case.” The Assistant Public Defender then told the court that there was an obvious conflict between “these gentlemen and myself,” that is, that the defendants did not have confidence in the attorney’s ability. On the day of trial, the Public Defender called to the attention of the court that he had only recently learned that the defenses of the defendants were no longer compatible and that Washington now intended to lay the blame on Thompson. In response to the court’s ensuing inquiry, Washington, in Thompson’s presence, denied the existence of this conflict, and, as it later developed, no such conflict existed. No other potential conflict was called to the court’s attention, and no request for separate counsel was made by either defendant.

. An actual conflict of interests is, ipso facto, prejudicial. The language in Cuyler v. Sullivan, supra, 446 U.S. at 348, 100 S.Ct. at 1718, “a defendant ... must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance,” has not been read to mean that a defendant must show prejudice beyond actual conflict, e.g., that the result would have been otherwise. See United States v. Benavidez, 664 F.2d 1255 (5th Cir. 1982); Baty v. Balkcom, 661 F.2d 391 (5th Cir. 1981).

. While the State does not argue that a claim of ineffective assistance of counsel may not be *1101 raised for the first time on direct appeal, we do not overlook abundant authority to that effect. See, e.g., State v. Barber, 301 So.2d 7 (Fla.1974); Walker v. State, 399 So.2d 374 (Fla. 3d DCA 1981), and cases cited therein. We believe, however, that the Florida Supreme Court’s holding in Foster v. State, 387 So.2d 344 (Fla.1980), carved an exception to Barber and its progeny where a claim of ineffectiveness arises from joint representation. There the court said: “Even in the absence of an objection or motion below ... where actual conflict of interest or prejudice to the [defendant] is shown, the court’s action in making the joint appointment and allowing the joint representation to continue is reversible error,” Id. at 345. Foster involved a conflict in the representation of the defendant and a co-defendant who during trial became a key state witness and was rewarded with a dismissal of the case against her after the completion of her testimony. Since there is no rule that such dual representation is a per se conflict of interest from which prejudice is presumed, see Annot. 27 A.L.R.3d 1431 (1969), Foster must be read as allowing the ineffective assistance claim to be raised for the first time on appeal if actual conflict, and thus prejudice, is shown in the trial record. Moreover, because the dissent in Foster urged that Barber controlled, it is clear that Foster rejected the notion that ineffective assistance of counsel could never be recognized as fundamental error.

. At oral argument, Thompson’s counsel unwittingly suggested that had Thompson had the benefit of independent counsel, he might have made a deal to plead to a lesser offense, or for a sentence less than the fifteen years he received, in exchange for testifying against Washington, against whom the evidence was less persuasive. This record not only is silent as to this opportunity for Thompson, but, in light of Thompson’s trial testimony that he knew nothing about the robbery or Washington, we would hardly recognize that a conflict of interest exists when joint representation is said to prevent a defendant from committing perjury. See United States ex rel. McClindon v. Warden, Illinois State Penitentiary, 575 F.2d 108 (7th Cir. 1978).

. Of course, a defendant is entitled to the effective assistance of counsel at sentencing as well as trial. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Washington v. Strickland, 673 F.2d 879 (5th Cir. 1982); Dozier v. United States District Court, 656 F.2d 990 (5th Cir. 1981). But an argument that counsel’s failure to point up some difference in the amount of proof against a defendant (irrelevant in the face of a jury verdict of guilty) is hardly an argument that counsel was ineffective.

. In Glasser, two defendants were represented by the same lawyer. Glasser objected and pointed to potential conflicts and prejudice; his co-defendant did not object and made no showing of prejudice. Glasser’s conviction was reversed; the co-defendant’s conviction was affirmed. As the Florida Supreme Court correctly observed in State v. Youngblood: “Obviously, if joint representation of co-defendants by the same lawyer necessarily results in prejudice, the court could not have reached different results for Glasser [and his co-defendant].” 217 So.2d at 100 (emphasis in original).

. Before Belton and Youngblood, one might have relied on Baker v. State, 202 So.2d 563 (Fla.1967), as standing for a per se rule, at least where objection to joint representation is made. There the court said:
“The interests and defenses of most co-defendants are conflicting. Evidence, strategy and defenses which will benefit one co-defendant usually are detrimental to the other. It is this conflict and inconsistency of position which makes it impossible for the same counsel to effectively represent two or more co-defendants simultaneously.

“The state, however, contends that even if the defendants were entitled to have separate counsel, the error was harmless because defendants have not shown they were prejudiced. We cannot agree. As was said in Glasser, 315 U.S. at 76, 62 S.Ct. at 467:
“ ‘The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.’

“Accordingly, we hold that it was unnecessary that the defendants show prejudice flowing from the denial to them of separate counsel.” Id. at 566 (emphasis supplied).
But Belton and Youngblood reject any reading of Baker as establishing a per se rule and substitute instead the rule that “when a joint defendant requests separate counsel, his request should be granted unless the state can clearly demonstrate for the record that prejudice will not result from a denial.” 217 So.2d at 101 (emphasis supplied). Here, the State had no such burden, since no request was made. Instead, it was the defendant’s burden to show prejudice.
While much can be said for a rule requiring a separate attorney for a separate defendant, see United States v. Mari, 526 F.2d 117, 119 (2d Cir. 1975) (Oakes, J., concurring), and a rule requiring the court to conduct inquiry wherever there is joint representation, see Fed.R.Crim.P. 44(c) advisory committee note, we are not at liberty to fashion such rules. Hoffman v. Jones, 280 So.2d 431 (Fla.1973).

. It may be that while Washington had little to gain by an argument that the proof against Thompson was more substantial, he had something to gain by testifying that Thompson did the whole thing. However, as we have said, supra note 4, a conflict of interest is not cognizable when the joint representation is said to prevent a defendant from committing perjury.