IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 97-40761
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO RIVERA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. M-96-CR-75-2

July 16, 1999

Before GARWOOD, HIGGINBOTHAM and WIENER, Circuit Judges.

PER CURIAM:[*]

Ricardo Rivera appeals his conditional guilty-plea conviction for conspiracy to possess marijuana with intent to distribute. Rivera argues that he did not voluntarily consent to the warrantless search of his home and that he had not validly waived his right to conflict-free counsel.

Rivera and co-defendants Simon Sandoval, Roby Sandoval, and George Garcia were charged in a two-count indictment. Rivera and

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the two Sandovals were represented by the same retained counsel, attorney Zimmerman of Dallas. All defendants pleaded not guilty. A motion to suppress evidence was filed by attorney Zimmerman on behalf of Rivera and the Sandovals and by attorney Alvarez (of McAllen) on behalf of Garcia. After evidentiary hearings, the district court wholly denied the motion to suppress. Subsequently, Garcia, who was out on bond, was killed. Thereafter, Rivera and Simon Sandoval changed their pleas from not guilty to guilty to count one pursuant to identical plea agreements calling for the government to dismiss count two and recommend a three-level reduction for acceptance of responsibility and a sentence at the low end of the sentencing guidelines range. At the rearraignment, the district court stated its understanding that Rivera's plea (and Simon's) reserved the right to appeal only the denial of the motion to suppress and requested defense counsel to put that in writing in compliance with Fed. R. Crim. P. 11(a)(2) so all would know just what was reserved for appeal. Defense counsel agreed to do so and later in the rearraignment hearing a handwritten document signed by Rivera and Simon was filed stating "we reserve the right to appeal the Court's ruling on our motion to Suppress the Evidence under Rule 11(a)(2)." The government consented to and the district court approved Rivera's (and Simon's) guilty plea with, in the court's words, "them reserving their right to appeal, if they so desire, the Court's ruling on the motion to suppress." On the same day, the district court, pursuant to the government's motion, dismissed without prejudice the indictment as to Roby Sandoval. Rivera was

subsequently sentenced to sixty months' imprisonment, followed by four years' supervised release, on count one, the minimum sentence under the guidelines, and count two was dismissed. After sentencing, Zimmerman ceased representing Rivera, who had no further funds to pay him. Rivera filed below a motion stating "I want to appeal the Motion to Suppress and Sentence, but I cannot afford a lawyer" (on this appeal no complaint is made as to Rivera's sentence). The district court appointed the public defender to represent Rivera on appeal.

## I.

We have reviewed the record and the briefs of the parties and hold that the district court did not clearly err in finding that Rivera had voluntarily consented to the search of his home. *United States v. Rivas*, 99 F.3d 170, 175-76 (5th Cir. 1996).

The government's evidence reflected that Rivera gave both verbal and written consent to search his home. A video tape taken by an officer of Rivera's giving of his consent was put in evidence by the government and reflects nothing suggestive of coercion, deception, or lack of understanding. The consent form signed by Rivera clearly recites "I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form" and that "no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form." Rivera in his testimony admits that the video reflects his statement that he was signing the consent form voluntarily.

3

Rivera's testimony (given entirely in English without an interpreter present) supports the conclusion that he had the capacity to read and understand the consent form, and there is no contrary evidence. The officers testified no physical or verbal threats were made to induce Rivera's consent. Their testimony also reflected that no guns were drawn or pointed at Rivera when he gave his consent, and that Rivera was read his *Miranda* rights twice before giving his verbal and written consent. The government's evidence clearly sufficed to meet its burden of adequately supporting a finding that Rivera's consent was voluntarily given. And, the district court was not required to, and expressly did not, credit the suppression hearing testimony of Rivera, his wife and children, and friend relied on to show that the consent was not voluntary. *See, e.g., United States v. Garza*, 118 F.3d 278, 283 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 699 (1998) ("We will not second guess the district court's factual findings as to the credibility of witnesses"); *United States v. Broussard*, 80 F.3d 1025, 1036 (5th Cir. 1996) ("The district court was not required to believe [the defendant's] testimony or proffered evidence at the suppression hearing.").

## II.

At Rivera's initial appearance on April 16, the magistrate judge conducted a hearing under Fed. R. Crim. P. 44(c) concerning Zimmerman's joint representation of Rivera and the Sandovals. The magistrate judge initially ascertained from Zimmerman that he had gone over with Rivera and the Sandovals "the potential conflict

4

situation here" as well as the waiver of conflicts affidavit form Rivera later signed. Rivera and the Sandovals were then fully advised in open court by the magistrate judge of the many ways in which such joint representation could involve an existing conflict of interest on the part of the attorney or in which such a conflict could later arise to the potential detriment of Rivera and/or the Sandovals, and the magistrate judge likewise advised of the right of Rivera (and the Sandovals) "to be represented by an attorney who represents you and only you" and to select another attorney. No complaint is made as to the adequacy and accuracy of this advice, which Rivera and the Sandovals, under questioning by the magistrate judge, expressly stated they understood. The magistrate judge then asked Rivera whether "after having gone over this situation with you, you still wish to have Mr. Zimmerman represent you," to which Rivera replied "Yes, sir." The same questions were separately asked each of the Sandovals, who each gave the same response. The magistrate judge stated that "I would recommend that you strongly consider the possibility of having separate counsel" and "it's almost always a better idea to have separate counsel." Zimmerman was asked by the magistrate judge if he saw any conflict, and the following transpired:

> "**Mr. Zimmerman:** I believe up to some point that's true, Your Honor. If there is a possibility that at some point that a conflict will develop and if it does, we'll have another attorney to substitute in. But at this point, I don't see a problem with representation of more than one person.
> **The Court:** Okay. And, as an officer of the court, we'll just rely on you to bring that up promptly if that situation should arise.
> And, each of you should be aware as well that it may

5

be a situation in which if a conflict does arise Mr. Zimmerman may not be able to represent any of you at that point because of the circumstance in which he has obtained information confidentially from each of you or presumably will if he has not already. And so you'll be sure to understand that also.

Mr. Martinez, as far as the Government is concerned, what is the Government's position as far as permitting Mr. Zimmerman to proceed on behalf of these three defendants?

**Mr. Martinez:** Your Honor, we have no opposition. I think that being an officer of the court, Mr. Zimmerman, hopefully, would notify the Court immediately if he sensed or came close to a conflict in the case.

**The Court:** All right. I will also advise each of the defendants that I would recommend to you that you discuss with another attorney whether or not it's advisable for you to proceed having the same attorney. Again, that's up to you. But I think that would be a good idea.

You may have the right to have an appointed attorney to discuss that situation with, and if you are unable to afford to hire a separate attorney or to pay for a consultation of that nature.

We do need to – I'm going to give you a date by April 26 that I'll indicate that you should consult with separate counsel if you're going to do that. You should do that right away. And the reason that I'm giving you a date is that once we get further along, if you were to change attorneys, that's going to delay the case and the ability to proceed forward with it. And so for that reason, I'm directing each of you by – that's a week from Friday to – if you're going to consult with another attorney or to advise the Court that you have changed your mind and you want to employ separate counsel that you advise the Court by that date if you are going to take advantage of that."

The magistrate judge again ascertained that Rivera and the Sandovals understood "what I've explained here today" and then again confirmed that each defendant had gone over the waiver affidavit with Zimmerman and these were signed and filed. The magistrate judge then allowed the joint representation, stating "It's not apparent at this point that there is an actual conflict and it does appear that each of these defendants does want to have

6

Mr. Zimmerman represent them."

On appeal no complaint is made of what was orally stated—or omitted—at the April 16 hearing.  And, we interpret the magistrate judge's remarks there to mean, and to be understood by those present, that there was then no present *actual* conflict of interest and that, although Rivera and the Sandovals had only until April 26 to seek to be relieved of dual representation *per se*, nevertheless if an actual conflict were to later develop it would be brought to the court's attention and appropriate action taken.  Rivera does not argue to the contrary.  Instead, the sole basis of his second point on appeal is a complaint of the following language in the paragraph of the waiver affidavit just preceding its final sentence, *viz*: "I will not be permitted to select a different attorney in the future if any possible conflicts explained to me (or others not now foreseen) should occur" and "I may discuss this problem with the Court of my desire to change attorneys no later than April 26, 1996, the Court will consider that I do not wish to change my decision and I give up my right to other counsel."[1]

_____

[1]The paragraph as a whole reads as follows:

"Despite all these facts and information, I choose to be represented by my attorney <u>Barry Louis Zimmerman</u>. I understand that I will be given time to select another attorney should I choose to do so, but I do <u>not</u> now choose to obtain any other attorney.  I understand that I am waiving my right to select a different attorney, and that I will not be permitted to select a different attorney in the future if any possible conflicts explained to me (or others not now foreseen) should occur.  The reason I must now make this decision is so that the trial will not be delayed and so that a severance can be avoided.  I have also been informed and I understand that I may discuss this problem with the

7

While we do not condone this language, we conclude that no ground for reversal is established.

This complaint is raised for the first time on appeal.[2]  The plea of guilty does not reserve the right to appeal on this or any related basis.  That would ordinarily constitute a waiver of all nonjurisdictional defects in the proceedings below.  *See* Rule 11(a)(2); *United States v. Bell*, 966 F.2d 914 (5th Cir. 1992).  Such a waiver "includes all claims of ineffective assistance of counsel [citations] *except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).  A single attorney's representation in the same case of two or more defendants charged with the same offense does not *of itself* alone mean that there was in fact an *actual* conflict of interest or that the dual representation had any adverse effect.  *See United States v. Rico*, 51 F.3d 495, 508-9 (5th Cir. 1995); *United States v. Benavidez*, 664 F.2d 1255, 1259-62 (5th Cir. 1982).  Any failure to properly comply with Rule 44(c) is not reversible error unless it is shown "that defendant has been denied the Sixth Amendment right that the rule was designed to protect."  *Benavidez* at 1259.  Here Rivera does not allege, and nothing in the record suggests, that

---

Court of my desire to change attorneys no later than <u>April 26, 1996</u>, the Court will consider that I do not wish to change my decision and I give up my right to other counsel."

[2]There is no suggestion in the record that at any time after the April 16 hearing any one ever sought to complain about or bring to the court's attention anything suggestive of a conflict of interest or the performance of counsel.

there ever was an *actual* conflict of interest on Zimmerman's part or that his representation of the Sandovals as well as Rivera in any way affected, adversely or otherwise, either any aspect of Zimmerman's performance as Rivera's counsel or Rivera's guilty plea. And, there is nothing to suggest, and Rivera does not assert, that his guilty plea was other than fully informed and voluntary.

The judgment of the district court is AFFIRMED.