United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 16, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-20855

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS SALADO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DeMOSS and STEWART, Circuit Judges, and LITTLE, District Judge.*

CARL E. STEWART, Circuit Judge:

This appeal arises out of a successful sting operation aimed at the Arcadio Franco Narcotics

Organization ("Organization") of which Arcadio Franco ("Franco"), Carlos Salado ("Salado"), Noe

Aguirre-Garcia ("Aguirre-Garcia"), and Jose Garcia-Marines ("Garcia-Marines") were participants.

During the pre-trial proceedings, Franco and Salado pled guilty without a plea agreement to

trafficking marijuana in violation of 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(B)(vii). Franco and

Salado were represented by the same attorney. On appeal, Salado argues that his guilty plea was not

---

*District Judge of the Western District of Louisiana, sitting by designation.

knowing and voluntary because the district court failed to comply with FED. R. CRIM. P. 11(d), and failed to conduct a FED. R. CRIM. P. 44(c) hearing to determine whether he waived his Sixth Amendment right to conflict-free counsel. Salado also argues that the district court erred in enhancing his offense level for gun possession under U.S.S.G § 2D1.1(b)(1). Because we conclude that Salado has sufficiently alleged that an actual conflict of interest existed due to his counsel's joint representation of him and Franco, we remand the case to the district court for a Rule 44(c) hearing. We reject Salado's other arguments concerning his guilty plea and sentencing enhancement and affirm Salado's sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2000, the Immigration and Naturalization Service ("INS") began an investigation into the Organization upon learning of its involvement in the transportation of multi-kilograms of marijuana, cocaine, and heroin from the Mexico border to Houston, Atlanta, and Chicago.[1] The INS immediately placed two of its special agents undercover to infiltrate the organization as transporters of narcotics. One of the INS agents immediately contacted Franco and negotiated a deal to transport 1600 pounds of marijuana from Laredo, Texas to Atlanta.

On August 10, 2000, the INS agent met with Franco and two unknown individuals named Chewy and Nacho to discuss transportation arrangements. The following day, Franco delivered approximately 1700 pounds of marijuana in a rental truck to the INS agent. On August 15, 2000, Franco told the INS agent to contact Chewy upon his arrival in Atlanta. On August 16, 2000, the INS agent contacted Chewy, who informed him that the planning meeting would take place at the

---

[1]The INS is now the Bureau of Citizenship and Immigration Services ("BCIS"). For ease of reference, the decision will refer to the agency as the INS.

2

Applebee's restaurant in Cartersville, Georgia. The INS agent later met with Aguirre-Garcia and Salado at the Applebee's restaurant. Salado informed the INS agent that he was Chewy's brother.

On August 17, 2000, the INS agent again went to the Applebee's restaurant as planned, meeting this time with Salado, Aguirre-Garcia, and Garcia-Marines. Salado and Aguirre-Garcia drove to the restaurant in separate vans, while Garcia-Marines drove to the restaurant in a black pickup truck. Salado, Aguirre-Garcia, and Garcia-Marines subsequently followed the INS agent to a warehouse in the two vans. The pickup truck was left behind at the restaurant. At the warehouse, the marijuana was weighed and placed in the two vans. Aguirre-Garcia and Garcia-Marines drove the two vans with the marijuana back to the restaurant. The INS agent drove Salado back to the restaurant, where Salado entered the black pickup truck and acted as countersurveillance for Aguirre-Garcia and Garcia-Marines. The vehicles were ultimately stopped and the occupants were arrested. A handgun was recovered from the black pick-up truck that Salado was driving. Following the arrests of Salado, Aguirre-Garcia, and Garcia-Marines, the INS agents continued to negotiate future narcotics deals with Franco until his arrest on January 17, 2001.

On December 11, 2000, the Government filed a two-count indictment charging Salado, Franco, Aguirre-Garcia, and Garcia-Marines with conspiracy to possess more than 100 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(vii). Franco was also individually charged with aiding and abetting the possession of more than 100 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii), and 18 U.S.C. § 2.

On January 17, 2001, Salado and Aguirre-Garcia appeared at a counsel determination hearing before a magistrate judge. At that hearing, Salado and Aguirre-Garcia informed the court that they

3

both wished to obtain the same lawyer. The magistrate judge immediately warned them of the perils of joint representation and advised them that they could waive their right to independent counsel.[2] The magistrate judge set the counsel determination for the next day at which time Salado and Aguirre-Garcia informed the court that they wished to obtain separate counsel. Kent Schaeffer was appointed as Salado's counsel. Salado, however, later successfully petitioned the district court to allow Roberto Rivera ("Rivera") to substitute as his counsel. Rivera also represented Franco.

Salado ultimately pled guilty, without a plea agreement, and was sentenced to 87 months imprisonment, four years supervised release, and a $100 mandatory special assessment.[3] Franco pled guilty pursuant to a plea agreement and was sentenced to 108 months. Aguirre-Garcia and Garcia-Marines were sentenced to 57 and 63 months, respectively.[4] On October 9, 2001, Salado wrote a letter to the district court informing it that Rivera promised him that he would receive a four-to-six month sentence if he pled guilty. Salado appeals his conviction and sentence.

DISCUSSION

Salado raises three arguments on appeal. First, Salado argues that the district court failed to comply with Rule 44(c) and United States v. Garcia, 517 F.2d 272 (5th Cir. 1975). Second, Salado argues that the district court failed to comply with Rule 11(d) by not inquiring into whether he pled guilty because of a promise of leniency. Third, Salado argues that the district court erred by

---

[2]The particulars of the warnings are discussed infra.

[3] Salado's base offense level was initially 30, however, it was reduced to 29 based on a two level increase for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), and a three level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).

[4] Both Aguirre-Garcia and Garcia-Marines received a two level decrease for a safety valve reduction under U.S.S.G. § 5C1.2. Salado's gun possession prohibited him from receiving the safety valve reduction.

enhancing his sentence two levels pursuant to U.S.S.G. § 2D1.1(b)(1) as a result of the firearm found in his vehicle.

I.    Did the district court comply with Rule 44(c), and if not, is reversal required?

Salado argues that the district court failed to hold the requisite Rule 44(c) and Garcia hearing to determine whether he wished to knowingly and voluntarily waive his Sixth Amendment right to conflict-free counsel. This failure, Salado contends, renders his plea unknowing and involuntary and requires reversal. The Government, on the other hand, contends that the district court met its Rule 44(c) obligations based on the conflict of interest warnings given by the magistrate judge during Salado's and Aguirre-Garcia's counsel determination hearings. Moreover, the Government argues that Salado waived any conflict of interest when he requested that Rivera be substituted in as his counsel.

A.    Did the district court comply with Rule 44(c)?

FED. R. CRIM. P. 44(c) provides the following:

> Whenever two or more defendants have been jointly charged ... or have been joined for trial ... and are represented by the same retained or assigned counsel ..., the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

"The requirements of Rule 44(c) are designed to advance its prophylactic purpose: the inquiry by the court will help to identify any potential conflict raised by joint representation so that the court can carry out its duty to take such measures as may be appropriate to protect each defendant's right to counsel." United States v. Benavidez, 664 F.2d 1255, 1258 (5th Cir. 1982) (quoting Rule 44(c)). Thus, personally advising the defendants of their rights will increase the likelihood that any waiver

5

of conflict-free counsel will be voluntary, knowing, and intelligent. Id. In United States v. Newell,

this Court recently reaffirmed the district court's duty to advise defendants of possible conflicts of

interest before a valid waiver can be obtained:

> After twenty-seven years, the requirements of United States v. Garcia are at the hand of every trial judge in the circuit. It commands that the district court "address each defendant personally and forthrightly advise him of the potential dangers of representation by a counsel with a conflict of interest" and detail specifics about potential conflicts that are then foreseeable. The trial court should then seek to elicit a response from each defendant that he understands the details of the attorney's possible conflict of interest and the potential perils of such a conflict.

315 F.3d 510, 519-20 (5th Cir. 2002).

During their initial counsel determination hearing, Salado and Aguirre-Garcia informed the

magistrate judge that they both intended to hire the same attorney. In response, the magistrate judge

advised them of the following:

> This is not in your best interest to hire the same lawyer. Especially, in a case where there's a conspiracy charge or where it would be beneficial to one of you to blame the other. And if you are hiring the same lawyer because you're pooling your money, then I want you to know that you can have a court-appointed lawyer free of charge if you can't afford to hire your own independent lawyer.

> The United States Constitution gives every criminal defendant the right to effective assistance of counsel. When one lawyer represents two or more defendants in a conspiracy case, the lawyer may be unable to represent all the defendants with the same fairness. This joint representation may cause a conflict of interest that denies a defendant the right to effective assistance of counsel. Conflicts are a potential problem because different defendants may have different degrees of involvement.

> Each defendant has the right to a lawyer who represents him and him alone. There are potential dangers for each defendant when he is represented by counsel with a conflict of interest from representing two or more defendants in the same case. For example, the Government might offer to recommend a lesser sentence to one defendant if he cooperates with the Government. His lawyer should advise him whether or not to accept the offer. If a lawyer advised to accept, his cooperation may harm the case of the other defendant whom the lawyer also represents.

The Government might permit a defendant who is not as involved as other defendants to plead guilty to lesser charges than the other defendants. After the guilty plea, the Government may require a defendant to testify against the other defendant. The lawyer who represents more than one defendant might recommend that the first defendant should not plead guilty. So that will protect the other defendant that he represents. But if the lawyer recommends that the first defendant plead guilty, then the case of the other defendant may be harmed.. .

In a conspiracy case, the best defense is [for one defendant to contend that the other] defendants are guilty, but that defendant is not part of the conspiracy and he is not guilty. A lawyer representing [two] or more defendants cannot effectively make such an argument. . .

So the Court advises you against representation by a lawyer who also represents another defendant in the same case.

I'm talking about you, Mr. Salado, and you, Mr. Garcia-[Aguirre]. I don't think it's a good idea for you to both have the same lawyer. Each defendant has the right to conflict free assistance of counsel by his own lawyer. Each defendant may also waive that right. If you both really just want the same lawyer, you can give up your right to an independent counsel. . .

If you both hire Mr. Bires, you'll have to sign a written waiver . . . I'm not going to require that now. But consider it in hiring your lawyer.

The following day, Salado and Aguirre-Garcia informed the magistrate judge that they "[intended] to hire their own lawyer." The Government asserts that the magistrate judge's warnings satisfied the strictures of Garcia and Rule 44(c) because the warnings made Salado aware of the potential conflicts of interest when he hired Rivera. Salado counters that the magistrate judge's perfunctory lecture did not comply with Garcia and Rule 44(c). Specifically, Salado argues that the magistrate judge's warnings were deficient because 1) the warnings were addressed to him and Aguirre-Garcia, not Franco, 2) the magistrate judge failed to engage him in a colloquy adequate to satisfy Garcia, 3) the magistrate judge did not inform him that a conflict of interest might prevent Rivera from negotiating a safety valve reduction for him under U.S.S.G. § 5C1.2., and 4) the

7

magistrate judge did not have the authority or jurisdiction under Article III or federal law to conduct a <u>Garcia</u> or Rule 44(c) hearing.

Although this Court has previously held, in <u>United States v. Rico</u>, 51 F.3d 495 (5th Cir. 1995), that a magistrate judge's warnings were sufficient to satisfy the mandates of <u>Garcia</u> and Rule 44(c), this case is distinguishable from <u>Rico</u>. The Court in <u>Rico</u> held, after reviewing the complete trial record, that no actual conflict of interest existed. Alternatively, the Court found that there were both oral and written indications of a knowing waiver of the right to conflict free counsel. Moreover, in <u>Rico</u>, the husband and wife codefendants who had the same counsel were the same throughout the case; the <u>Garcia</u> warnings were given at the defendants initial appearance, at the arraignment, and detention hearing; and each defendant signed a waiver form relinquishing their right to conflict-free counsel. <u>Id</u>. at 510. In this case, the magistrate judge's warnings were not directed at Salado and Franco and an explicit waiver was not obtained from Salado.[5]

There is also no indication in the record that the district court was aware of the warnings given by the magistrate judge to Salado and Aguirre-Garcia. The record reveals that more than six months elapsed before Salado and Franco appeared together before the district court judge under the Rivera's joint representation.[6] Even if the district court was aware of the warnings, "the obligation

---

[5] The Government asserts that Salado's request, and subsequent approval by the district court, to substitute in Rivera as counsel, constituted a waiver of Rivera's purported conflict of interest. The Government's attempt to turn Salado's signature on his motion for substitution of counsel into a waiver is wholly unpersuasive. Moreover, Salado "could not have knowingly and voluntarily waived his right to conflict-free counsel" due to the district court's failure to hold a Rule 44(c) or <u>Garcia</u> hearing. <u>See</u> <u>United States v. Greig</u>, 967 F.2d 1018, 1022 (5th Cir. 1992); <u>see</u> <u>also</u> <u>Benavidez</u>, 664 F.2d at 1259 n.2 (holding that the appellants did not waive their right to conflict-free counsel because the trial court complied neither with <u>Garcia</u> nor with Rule 44(c)).

[6] We note that the district court should have been aware of Rivera's joint representation prior to sentencing when he granted Salado's motion to substitute Rivera in as his counsel and accepted

8

placed upon the court by Rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest." Newell, 315 F.3d at 523 (quoting Rule 44 advisory committee note). In this case, the necessity of the warnings pertaining to Franco's and Salado's joint representation appears even greater as Franco was the broker of the drug deal with the INS agent. Thus, we reject the Government's argument that the magistrate judge's warnings were sufficient to comply with the mandates of Garcia and Rule 44(c). We find that the district court failed to properly conduct a hearing pursuant to Garcia and Rule 44(c).

B.    Does the district court's failure to comply with Rule 44(c) merit a reversal?

Having concluded that the district court failed to comply with Rule 44(c), we must now determine whether this failure merits reversal. It is well-established that a "trial court's failure to comply with Rule 44(c) does not, of itself, entitle a defendant to relief." United States v. Lyons, 703 F.2d 815, 820 (1983). Thus, "even if the trial court fails to comply fully with the mandates of Rule 44(c), a defendant must still demonstrate an 'actual conflict of interest' before we will reverse his conviction." Id. (quoting Benavidez, 664 F.2d at 1258-59). "If there is no actual conflict, then [Rule 44(c)'s] purpose will not be served by reversal of the conviction." Benavidez, 664 F.2d at 1258. Moreover, because Salado did not object to Rivera's possible conflict of interest, he must also prove that Rivera's actual conflict "adversely affected [Rivera's] performance." United States v. Holley, 826 F.2d 331, 333 (5th Cir. 1987); see also Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) (holding that "in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial

---

Salado's guilty plea at a rearraignment hearing. We also note that both of these instances occurred within two months after the magistrate judge's warnings.

9

must demonstrate that an actual conflict of interest adversely affected his lawyer's performance").

"An actual conflict of interest exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." Rico, 51 F.3d at 509. Joint representation by itself does not necessarily create a conflict of interest. Id. at 508.

We find that Salado has sufficiently alleged that an actual conflict of interest existed: to wit, he points to his counsel's failure 1) to negotiate a plea agreement for him when he did so for Franco, and 2) to request a debriefing with the Government, which may have led to a downward departure for Salado if he had cooperated with the Government in its case against Franco.[7] We note that this Court has readily determined whether an actual conflict of interest existed in cases where jointly represented codefendants proceeded to full trial on the merits due to the benefit of a full record. See Newell, 315 F.3d at 516-19 (finding an actual conflict after reviewing transcripts from the trial); Rico, 51 F.3d at 509 (finding no actual conflict after examining the trial record). In this case, however, it is understandably difficult for the Court to make such a determination where both Franco and Salado pled guilty during the pretrial proceedings. Thus, the district court's failure to conduct the requisite Rule 44(c) and Garcia hearing, combined with the sparsity of the record, mandates that we remand

---

[7] In Holloway v. Arkansas, the Supreme Court observed that a conflict of interest stemming from multiple representation may prevent an attorney "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution." 435 U.S. 475, 490 (1978). In Baty v. Balkom, 661 F.2d 391, 397 (5th Cir. Unit B Nov. 1981), this Court held that "an actual conflict of interest existed before trial because had the attorney not been facing a conflict of interest, he might have been able to negotiate a plea agreement on the petitioner's behalf in return for becoming a prosecution witness against the codefendant." In that case, the Government offered both codefendants plea agreements, but the Court noted that a conflict could still develop even where there was no possibility of a plea bargain. Baty, 661 F.2d at 397 n.12. The Court explained that "plea bargains are perhaps the most obvious example of the manifest effects of conflict of interest at pretrial proceedings." Id.

10

the case to the district court for an "after-the fact" Rule 44(c) hearing to determine whether there was an actual conflict of interest as a result of Rivera's joint representation of Salado and Franco.[8] See United States v. Gilliam, 975 F.2d 1050, 1054 (4th Cir. 1992) (remanding the case for a Rule 44(c) hearing in part to determine whether there was a conflict of interest); see also Lyons, 703 F.2d at 820 n.7 (noting that the court would consider a remand [for an after-the-fact Rule 44(c) hearing to determine whether a conflict existed] if there were some indication [in the record, the briefs, or arguments before this court] that it might be helpful). If the district court finds that an actual conflict of interest existed, it should then proceed to determine whether the actual conflict adversely affected Rivera's performance. We take no view as to whether an actual conflict will be shown upon remand; rather, we simply conclude that Salado has sufficiently alleged that an actual conflict of interest existed based on Rivera's joint representation such that further examination by the district court of this claim is warranted.

II.    Did the district court fail to comply with Rule 11?

Next, Salado argues that the district court failed to comply with Rule 11(d) by not inquiring into whether he was promised leniency for his guilty plea. Salado maintains that he pled guilty based in part on a promise made by Rivera or one of his associates that he would receive a four to six month sentence. Salado informed the district court of this promise by letter after sentencing. Because Salado did not object below, we review it for plain error. See United States v. Brown, 328 F.3d 787, 789

---

[8]Salado argues that Rivera's actual conflict is evidenced in the record based on the following: 1) the district court's approval of his motion to substitute Rivera in as his counsel, 2) at rearraignment when Rivera appeared on behalf of both Salado and Franco, 3) when Franco pled guilty under a plea agreement that Rivera negotiated for him, and 4) during sentencing when Rivera specifically stated that he was representing both of them. Although Salado's examples establish that the district court was aware of Rivera's joint representation, they do not establish that Rivera had an actual conflict. However, Salado's arguments intimate that an actual conflict existed.

11

(5th Cir. 2003).[9]

Rule 11(d) provides that a trial court may not accept a guilty plea "without first ... addressing the defendant personally in open court, [to] determin[e] that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." During rearraignment, the district court engaged in the following colloquy with Salado:

> The Court: It is my understanding, Mr. Salado, that you are here to enter a plea of guilty to Count Two of the indictment that charges conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. Is that your understanding?
>
> The Defendant: Yes.
>
> The Court: And that you do not have a plea agreement, you have not made plea bargaining with the government in this case. Is that true as well?
>
> The Defendant: Yes . . .
>
> The Court: the charge of conspiracy . . . carries with a term of imprisonment not less than five years or more than forty years and/or, one or both, a fine not to exceed $2 million . . . Do you understand all of this to be the range of punishment available to the Court if you are found guilty of this offense?
>
> Salado: Yes.
>
> The Court: All right. In light of all of this, do you desire to go ahead and enter a plea of guilty?
>
> Salado: Yes, Your Honor . . .
>
> The Court: Do you have a plea agreement or did you make an arrangement or a deal with the government.
>
> Salado: No, Your Honor . . .

---

[9]Although Salado argues that the clear error standard of review is applicable because his failure to object was the result of Rivera's conflict, under either standard he loses.

The Court: And I think you told me that no one has forced you engage in this activity, today, that is entering this plea.

Salado: Yes, your honor.

The Court: And no one forced you to engage in a conduct that you engaged in as a basis of this indictment?

Salado: No Judge.

The district court then asked Rivera the following questions regarding his representation of Salado:

The Court: Is it your opinion that based upon what he's told you and what you know from your investigation, that his plea of guilty is in his best interest in this case?

Rivera: Yes, I think so. . .

The Court: And of course, when I spoke [to Salado] about the penalty range and the punishment range associated with this case, that is not something he would have heard for the first today, correct?

Rivera: That's correct, your honor?

Although the district court did not fully comply with Rule 11(d), we find that this failure does not render Salado's plea involuntary. In <u>Barrientos v. United States</u>, this Court rejected a similar argument where it found that the district court judge's inquiry revealed the voluntary nature of the plea. 668 F.2d 838, 842 n. 2 (5th Cir. 1982) (holding that "while the district judge may not have expressly inquired into the existence of other promises, her inquiry was adequately detailed and revealed the voluntariness of the plea."). The Court further noted that "so long as the trial judge is convinced by the record before him that a guilty plea is not coerced, a further showing that a plea is knowingly entered and there exists sufficient evidence of guilt will satisfy requirements of Rule 11. <u>Id</u>. (quoting <u>United States v. Martinez</u>, 486 F.2d 15, 21 (5th Cir. 1983)). In this case, the district court's colloquy reveals that Salado's plea was made knowingly and voluntarily. The record also

13

contains abundant evidence of Salado's guilt. Moreover, the district court expressly informed Salado that his punishment range was from five to forty years.

III.     Did the district court err in enhancing Salado's offense level for gun possession

Lastly, Salado argues that the district court erroneously enhanced his sentence based on the possession of a firearm under U.S.S.G. § 2D.1.1(b)(1), which permits a two level increase in the offense level "if a dangerous weapon (including a firearm) was possessed." United States v. Eastland, 989 F.2d 760, 770 (5th Cir. 1993). "The commentary to 2D1.1(b)(1) explains that the enhancement factor 'reflects the increased danger of violence when drug traffickers possess weapons', and should be applied 'if the weapons was present, unless it was clearly improbable that the weapon was connected with the offense'." Id. (quoting U.S.S.G. § 2D1.1 comment (n.3)). The Government has the burden of proof under § 2D1.1 of showing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. Id. Under this standard, the Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. We normally review this factual finding for clear error, however, because Salado failed to object we will review it for plain error. See United States v. Cabral-Castillo, 35 F.3d 182, 189 (5th Cir. 1994).

Salado's argument that there is no connection between the firearm and his offense is unavailing. Although Salado argues that the gun was neither in his possession at the warehouse during the marijuana exchange nor was it in the vans where the marijuana was placed, he ignores the fact that the firearm was in his possession while he was acting as countersurvelliance for Garcia-Marines and

14

Aguirre-Marines.[10] Thus, we find that the sentencing enhancement was properly applied because it was "probable that the firearm was connected to the offense." Eastland, 989 F.2d at 770.

CONCLUSION

For the foregoing reasons, we remand the case to the district court to conduct a Rule 44(c) hearing. We also affirm the district court's sentence enhancement under §2D1.1 for gun possession.

REVERSED and REMANDED IN PART, and AFFIRMED IN PART.

---

[10]As such, Salado's argument that by leaving the gun in the pickup truck he and his codefendants ensured that the gun would not be used in connection with the offense is meritless. Moreover, Salado's reliance on United States v. Cooper, 274 F.3d 230 (5th Cir. 2001) is misplaced. In Cooper, the Court found that the Government failed to show that a temporal and spatial relation existed between the weapon, the drug trafficking activity and the defendant where there were no drugs found in the vehicle, where the vehicle was seized and nothing in the record showed that the defendant used that vehicle to transport drugs or to conduct any other activities associated with the conspiracy. Id. at 245. In this case, Salado clearly used the gun in the commission of this offense.