### UNITED STATES of America, Defendant-Appellee,

v.

### Joe Dean BURNEY, Plaintiff-Appellant.

### Nos. 83–2383, 83–2534.

United States Court of Appeals, Tenth Circuit.

March 7, 1985.

Jim Bland of Gotcher, Brown & Bland, McAlester, Okl., for plaintiff-appellant.

Samuel Rosenthal, Atty. Dept. of Justice, Washington, D.C. (Gary L. Richardson, U.S. Atty., and Donn F. Baker, Asst. U.S. Atty., Muskogee, Okl., on brief), for defendant-appellee.

Before BARRETT, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Joe Dean Burney was indicted on one count of unlawful possession of a firearm, 18 U.S.C.App. § 1202(a)(1) (1982), and two counts of interstate sale of fish taken or sold in violation of state law,[1] 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(2) (1982). He was convicted by a jury on the two counts of interstate sale of fish. On appeal, he claims that he was denied effective assistance of counsel because of his attorney's joint representation of multiple defendants. We disagree and affirm.

## I.

## BACKGROUND

In setting forth the circumstances giving rise to this appeal, we view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Petersen,* 611 F.2d 1313, 1317 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

In May 1982, special agents Dale Horne and Cindy Schroeder of the United States Fish and Wildlife Service began an undercover investigation of illegal commercial sales of fish and wildlife in eastern Oklahoma. On May 17, 1982, Horne, posing as a Texas restaurant representative, called Burney at his home near Henryetta, Oklahoma, and suggested that the two meet to discuss Horne's desire to purchase catfish. Burney and Horne met the next day and discussed the matter but reached no agreement.

In September 1982, Schroeder and Horne met with Burney and accompanied him in his boat while he checked a number of fishing lines in nearby Lake Eufaula. On October 25, 1982, the agents visited Burney at his home and after some discussion, Burney offered to sell them one hundred pounds of catfish he had taken from Lake Eufaula. Joyce Burney, defendant's wife, was present at this meeting and participated in weighing and selling the catfish. Horne paid the Burneys for the fish and the agents departed.

In early December, Horne called Burney to arrange another fish sale. Burney told Horne to call him the next day and on December 4, Horne called and recorded his conversation with Burney. Burney offered to sell catfish at the same price as the October 25 sale, and they arranged for a sale the next day. On December 5, Horne and Schroeder returned to the Burney home and purchased 50 pounds of catfish from Tami Burney and Connie Burney, defendant's daughter and daughter-in-law. Horne recorded this transaction. Neither Burney nor his wife were present during the December 5 transaction.

In March, Horne again called Burney to arrange another sale of fish and Horne recorded their telephone conversation. The two men discussed fishing but reached no agreement. According to Horne, on several occasions Burney also offered to sell Horne several firearms. On March 17, 1983, federal and state agents searched the Burneys' home and seized a number of items used to weigh and clean fish, a chart Burney had used to calculate prices, and several notebooks containing information of Burney's fish selling activities. The

---

**1.** Under Oklahoma law it is illegal to catch fish in a prohibited manner, to catch more than a prescribed limit, to catch nongame fish, or to sell fish without a commercial license. *See* Okla.Stat. tit. 29, §§ 6–301, 6–302, 6–303, 7–503 (Supp.1983). The indictment charged Burney with violating all of these state statutes.

agents also seized sixteen firearms stored in the Burneys' home and truck.

Burney was indicted on one count of illegal possession of firearms by a convicted felon. Burney and Mrs. Burney were jointly indicted on one count of illegally selling catfish on October 25. Burney, Tami Burney, and Connie Burney were jointly indicted on one count of illegally selling catfish on December 5. James Mayes, a court appointed attorney, represented all four members of the Burney family from their arraignment through the end of their joint trial.

At trial, Horne and Schroeder testified in detail about their investigation and the two catfish transactions. Four federal and state agents who searched the Burneys' home also testified regarding the seizure of the guns and other items. The government introduced photographs of the catfish purchased on October 25 and December 4, as well as the tapes of the recorded conversations. The government also introduced the items used to weigh and sell the fish, the notebooks, and an affidavit from Burney's neighbor, Terry Duvall, describing his sale to Burney of a shotgun that was among those seized on March 17.

Four of Burney's neighbors and friends testified for the defense as character witnesses. Duvall took the stand to challenge the accuracy of his prior affidavit concerning the shotgun sale. Burney's son, Jimmy Burney, testified that the guns were owned either by himself or by his mother. Finally, Burney took the stand to rebut the gun and fish sale charges. Joyce, Tami, and Connie Burney did not testify at trial.

The jury was unable to reach a verdict on the firearm possession charge and the court declared a mistrial. The jury found Burney and Mrs. Burney guilty of illegally selling fish on October 25. It also convicted Burney of illegally selling fish on December 5, but acquitted Tami and Connie Burney on this charge. Represented by different counsel on appeal, Burney claims that he was denied effective assistance of counsel at trial because Mayes represented all four Burney family members.

## II.

### JOINT REPRESENTATION

 The Sixth Amendment entitles a defendant in a criminal case to the effective assistance of competent counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Winkle,* 722 F.2d 605, 609 (10th Cir.1983). The constitutional standard for attorney performance is that of reasonably effective assistance, *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), which we have defined as the "exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney," *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). This right to effective assistance of counsel includes the right to counsel free from conflicts of interest. *Strickland,* 104 S.Ct. at 2067; *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 481– 82, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1977). Although multiple representation of co-defendants is not a per se violation of the Sixth Amendment, *id.* at 482, 98 S.Ct. at 1177, it does contain great potential for conflicts of interest. *United States v. Dressel,* 742 F.2d 1256, 1257–58 (10th Cir. 1984).

Fed.R.Crim.P. 44(c) "provides a procedure for protecting a defendant's Sixth Amendment right to effective assistance of counsel where two or more defendants have been jointly charged or are to be jointly tried, and are represented by the same counsel." *Id.* at 1258. Under Rule 44(c):

"[T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise the court shall take such measures as may be appropriate to

protect each defendant's right to counsel."

■ Although Mayes represented all four of the Burneys at their arraignment and at trial, the trial judge did not hold a Rule 44(c) hearing or otherwise inquire into any potential conflict of interest.[2] The record indicates, however, that trial counsel never brought the possibility of a conflict to the trial court's attention. The issue thus before us is the proper resolution of a claim of attorney conflict of interest when it is raised for the first time on appeal.

■ Although an attorney conflict of interest implicates the Sixth Amendment, that amendment does not require a court to initiate an inquiry when no party either objects to multiple representation or raises a conflict issue. *See Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980);[3] *United States v. Unger,* 700 F.2d 445, 453 n. 17 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983); *United States v. Benavidez,* 664 F.2d 1255, 1258 (5th Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982); *cf. United States v. Foster,* 469 F.2d 1, 4–5 (1st Cir.1972). The Sixth Amendment requires automatic reversal only when a trial court fails to conduct an inquiry after either a timely conflict objection, *Holloway,* 435 U.S. at 488, 98 S.Ct. at 1180, or if the court "knows or reasonably should know a particular conflict exists," *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717. "In order to establish a

violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718 (footnote omitted). A defendant does not have to demonstrate prejudice from the joint representation, but must "show that his counsel actively represented conflicting interests." *Id.* at 349–50, 100 S.Ct. at 1718–19.

■ A similar analysis applies under Rule 44(c). Courts that have addressed the issue have held that a trial court's failure to comply with Rule 44(c) does not, of itself, require reversal of a conviction. *See United States v. Alvarez,* 696 F.2d 1307, 1309 (11th Cir.), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983); *United States v. Arias,* 678 F.2d 1202, 1205 (4th Cir.), *cert. denied sub nom. Faircloth v. United States,* 459 U.S. 910, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982); *Benavidez,* 664 F.2d at 1258–59. The rationale for these decisions is that "neither the inquiry nor the advice is itself the goal of the rule; that goal is preventing conflicts." *Id.* at 1258. Although we do not condone the trial court's failure to make the Rule 44(c) inquiry,[4] we agree with those decisions concluding that the failure alone is not sufficient grounds for reversal. Accordingly, we hold that a defendant claiming reversible error must show a denial of the Sixth Amendment right that the rule was designed to protect.[5] *Id.*

---

**2.** A defendant may waive the right to assistance of counsel unhindered by conflicts of interest. *See Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978). The Rule 44(c) hearing presents an appropriate occasion for such a waiver and satisfies the constitutional requirements governing effective waivers. *See United States v. Dressel,* 742 F.2d 1256, 1258–59 (10th Cir.1984). No issue of waiver is present in this case.

**3.** Although *Cuyler* involved a state court's duty under the Sixth Amendment, its reasoning and holding are equally applicable to the federal district courts. *See Cuyler,* 446 U.S. at 346 n. 10, 100 S.Ct. at 1717 n. 10. We therefore reject Burney's reliance on decisions holding to the contrary, *see, e.g., Colon v. Fogg,* 603 F.2d 403,

407 (2d Cir.1979), which were handed down before *Cuyler.*

**4.** We note that the "imposition upon the state, which is not heavy when [a conflict of interest] may be judicially remedied by appointment of separate counsel before trial, increases dramatically once the trial has occurred and appellate or post conviction remedial vehicles are the forum for conflict claims." *Smith v. Anderson,* 689 F.2d 59, 65 (6th Cir.1982). This heavier burden is all the more reason for a district court to conduct a proper Rule 44(c) hearing.

**5.** We reject Burney's argument that the Government should bear the burden of showing the absence of actual conflict or prejudice to a defendant when the trial court does not conduct a

■ Under *Cuyler* and the decisions interpreting Rule 44(c), Burney must demonstrate an actual conflict of interest. He must "point to 'specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.1983) (quoting *United States v. Fox*, 613 F.2d 99, 102 (5th Cir.1980)). The conflict must be real rather than hypothetical. *See id.* at 1328, 1331; *see also Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719 (the possibility of conflict is insufficient). As the Fifth Circuit noted in *Benavidez*, cases of actual conflict usually involve situations where:

"(1) the conflict was brought to the trial court's attention at the outset of the trial or at the time when the conflict first became apparent; (2) one defendant had evidence that would have exculpated himself but inculpated a codefendant; (3) the prosecution's evidence offered defendant a theory under which he could prove his own innocence by proving his codefendant's guilt."

*Benavidez*, 664 F.2d at 1259 (footnotes omitted). None of these situations are present here.[6]

■ Burney appears to concede his inability to point to any specific conflict when he admits that "it is difficult to state precisely what defense counsel in the instant case might have done differently if representing the interests of only one client." Brief of Appellant at 6. Moreover, to the extent that he attempts to identify specific actions of his attorney, we can discern no actual conflict of interest.

Burney first claims that Mayes failed to object on a number of occasions to the introduction of damaging physical evidence and testimony. He admits, however, that "[i]t is not possible to determine whether the above incidents are attributable to joint representation." *Id.* at 10. We see no conceivable connection between Mayes' decisions on whether to object and the fact of joint representation. Even assuming that some of the evidence could have been excluded, none of the evidence would inculpate some defendants while exculpating others. Any potential conflict concerning evidentiary objections is purely speculative and hypothetical and does not rise to the required level of actual conflict.

Burney also claims that Mayes failed to point out to the jury that Burney was not present during the December 5 fish sale for which he was convicted, while his daughters who were present were acquitted. He also claims that Mayes attempted to focus all the blame on him during Mayes' closing argument. Burney contends that this demonstrates actual conflict and prejudice arising from an impermissible attempt to shift the blame to one defendant while exculpating others.

We are not persuaded. Although Burney was not present during the December 5 sale, the government introduced the tape recording of Horne's December 4 conversation with him to show that he agreed to the sale. Burney told the agents he might not be present and said that someone would be there to make the sale. He also told the agents how much he had for sale, negotiated a price, and said he expected to have more fish the next day. The contents of the December 4 recording are extremely

Rule 44(c) hearing. Some circuits adopted such a burden-shifting requirement pursuant to their supervisory powers. *See, e.g., Fogg*, 603 F.2d at 407; *United States v. Foster*, 469 F.2d 1, 5 (1st Cir.1972); *cf. Lollar v. United States*, 376 F.2d 243, 247 (D.C.Cir.1967). We decline to do so. First, these cases were decided before *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Cuyler* clearly requires that "a defendant must establish ... an actual conflict of interest." *Id.* at 350, 100 S.Ct. at 1719. Shifting the burden to the government when a defendant has not objected at trial would result in a presumption of conflict clearly at odds with the holding and reasoning of *Cuyler* and the decisions interpreting Fed.R.Crim.P. 44(c). Moreover, allowing a defendant to benefit by remaining silent at trial would undercut the policy of early conflict determination which underlies Rule 44(c). *See* note 4, *supra*.

6. Nor is this a case where the trial court knew or should have known a particular conflict existed. *See Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717; *see also Wood v. Georgia*, 450 U.S. 261, 272 n. 18, 101 S.Ct. 1097, 1104 n. 18, 67 L.Ed.2d 220 (1980); *Winkle*, 722 F.2d at 611.

incriminating with respect to Burney. Given this evidence, we fail to see how any mention by trial counsel of Burney's absence from the actual sale could have exculpated Burney. We cannot conclude that counsel's failure to stress that Burney was not physically present at the December 5 sale was the result of any conflict of interest.

Furthermore, the evidence against Burney was so incriminating that no attempt to inculpate his daughters would have exculpated him. *Cf. Mers*, 701 F.2d at 1329. Burney was the primary participant in all of the fish selling activities, and he was the one who caught the fish. In contrast, the record contains no evidence that Burney's daughters had the knowledge or intent needed to violate the law by participating in the December 5 sale. The only evidence against them was the December 5 tape recording of the sale, the quality of which was so poor that the government conceded during closing argument that it was practically worthless as evidence. The obvious conclusion to be drawn from the record is that the Burney daughters' acquittal was due to the relatively weak case against them, and not any attorney conflict of interest during trial.

Finally, Burney contends that in closing argument his counsel attempted to focus all the blame on him. In context, the offending phrase relied on by Burney is underlined in the following passage:

"In connection with ... the alleged sale of 143 pounds of fish, J.D. Burney testified that only after much coaxing by the undercover Agent Horne, did he let him have the 100 pounds of fish. He testified he refused every request to sell the fish, because he did not want to violate the law.

"The undercover Agent Horne suggested that he compensate him, Mr. Burney, for taking undercover Agents Horne and Schroeder fishing, and he could then give him the fish he wanted. But since J.D. had acted as a guide before and been compensated for such service, he reluctantly agreed to such an arrangement. But [sic] only such an arrangement would he let the undercover agents have any fish at any time, and that *he was the only one responsible for any dealings with the undercover agents.*"

Rec., vol. III, at 211 (emphasis added).

We disagree that defense counsel's closing argument establishes a conflict. The record indicates that throughout the trial Mayes tried to establish that Burney had taken the money from the agents in return for his services as a guide, not for the sale of fish. Mayes also tried to show that Burney lacked any illegal intent and that agents Horne and Schroeder misled and entrapped the Burney family. Because the record shows that Burney was the only defendant who had any significant communication with the agents, it seems logical that he would claim to be solely responsible for these dealings and that he should be the one to testify and refute the agents' testimony. In addition, this is a case where the Burney family members' interests were "closely aligned such that their united front strategy might well have been the best strategy available." *Mers*, 701 F.2d at 1329 (quoting *United States v. Medel*, 592 F.2d 1305, 1312 (5th Cir.1979)). The record does not support an attempt by defense counsel to shift the blame to Burney.

Mayes pursued a reasonable and permissible course at trial, given that the four defendants differed somewhat in their degree of culpability. This strategy was partially successful, although it failed to result in an acquittal of Burney and his wife. Burney has not demonstrated an actual attorney conflict of interest, and the record does not contain evidence from which we can infer such a conflict. Accordingly, he was not denied effective assistance of counsel.[7]

---

**7.** We also reject Burney's claim that Mayes' trial performance was constitutionally deficient even if there were no conflict of interest due to joint representation. Our review of the record indicates that defense counsel's performance did not fall below that of a reasonably competent attorney. *See Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d

## III.

### REMAND FOR EVIDENTIARY HEARING

■ We reject Burney's request that we remand the case to the district court for an evidentiary hearing on the conflict of interest issue. In *Wood*, 450 U.S. at 272–74, 101 S.Ct. at 1103–04, the Supreme Court ordered an attorney conflict of interest claim remanded to the trial court for an evidentiary hearing because it was unable to determine from the record on appeal whether an actual conflict existed. The record there demonstrated that the possibility of a conflict was sufficiently apparent to the trial court, and the Court could not be sure whether counsel was adversely affected by a conflict. Consequently, it remanded for a hearing to determine whether an actual conflict existed and, if so, whether the right to independent counsel had been waived. We followed a similar procedure in *Winkle*, 722 F.2d at 611–12.

In this case, however, a remand is unnecessary. The record before us is sufficiently clear for our determination of the conflict of interest issue and further proceedings would not aid our inquiry.

Judgment affirmed.

---

674 (1984); *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). We note in particular that counsel's tactics and performance resulted in a hung jury on the illegal firearms possession charge. This was the most serious charge against Burney and the government devoted a great deal of its effort at trial attempting to prove it. The government's evidence against Burney was substantial and quite incriminating but counsel's defense was effective and successful. In contrast, the evidence against Burney on the illegal fish sale charges was overwhelming. Counsel's efforts were reasonably skillful under the circumstances.