FILED
United States Court of Appeals
Tenth Circuit

May 9, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

FRANCES M. FLOOD,

       Defendant - Appellant.

No. 12-4094

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. Nos. 2:11-CV-00960-DB and 2:07-CR-00485-DB)**

---

Elizabeth Hunt (and Andrew H. Parnes, Ketchum, Idaho, with her on the briefs),
Salt Lake City, Utah, for Defendant - Appellant.

Stewart Walz, (David B. Barlow, United States Attorney, and Diana Hagen,
Assistant United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff
- Appellee.

---

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Frances M. Flood, a federal inmate, sought a certificate of appealability

(COA) from this court to appeal the denial of her 28 U.S.C. § 2255 motion. We

granted a COA on two issues: 1) whether Ms. Flood's trial counsel labored under a conflict of interest that deprived her of effective assistance of counsel; and 2) whether the district court erred in denying Ms. Flood's motions for an evidentiary hearing, discovery, and judicial notice. Exercising our jurisdiction under 28 U.S.C. §§ 1291 and 2255(d), we now affirm the district court's denial of Ms. Flood's § 2255 motion. We also decline to expand the COA.

Background

In January 2003, the Securities and Exchange Commission (SEC) filed a civil suit against ClearOne Communications (ClearOne), as well as the company's CEO, Ms. Flood, and CFO, Susie Strohm, based upon an improper revenue recognition scheme. App. 9, 493. The SEC alleged that Ms. Flood and her codefendants had employed a scheme to defraud, falsely filed with the SEC, committed securities fraud, kept false records, and aided and abetted false bookkeeping. Id. at 9. According to Ms. Flood, ClearOne "selected" the law firm of Snow Christensen & Martineau (SCM) to represent her in the SEC litigation. Aplt. Br. 4. The parties were at all times represented by separate counsel.

During the SEC proceedings, Ms. Flood, Ms. Strohm, and ClearOne entered into a Joint Defense Privilege and Confidentiality Agreement (Joint Defense Agreement), which enabled them to share documents, litigation strategies, and other information without waiving attorney-client privilege. App. 67–73. The

- 2 -

Joint Defense Agreement prohibited the parties from using shared information against one another, or revealing information obtained under the agreement to outside parties. Id. However, the agreement made clear that it did not create attorney-client relationships between the attorneys and their clients' co-defendants. Id. at 71. Similarly, the agreement provided that it did "not in any way preclude [an] attorney from representing any interest that may be construed to be adverse to any other party." Id.

Ultimately, Ms. Flood settled with the SEC. Id. at 9, 498. Without admitting fault, she agreed to the entry of a permanent injunction and the imposition of a financial penalty. Id. Around the same time, Ms. Flood executed an Employment Separation and Indemnification Agreement (Separation Agreement) with ClearOne. Id. at 61–66. Under the Separation Agreement, Ms. Flood agreed to resign as CEO and surrender her stock options in exchange for $350,000 and ClearOne's promise to indemnify her "for any liability and all reasonable attorneys' fees and costs incurred by her in connection with the SEC Action or any Related Proceedings," subject to limitations under Utah law (i.e., Utah Code Ann. § 16-10a-902(1), which prohibits indemnification of directors who have acted in bad faith). Id. SCM represented Ms. Flood in negotiating and drafting the agreement. Id.

Subsequently, the government brought criminal charges against Ms. Flood and Ms. Strohm. According to Ms. Flood, ClearOne was initially a target of the

investigation, but was ultimately cast as a victim of the crimes. Aplt. Br. 3–4. Ms. Flood was indicted for conspiracy to commit various securities offenses, making false statements to accountants, securities fraud, and perjury. App. 426–39.

SCM continued to represent Ms. Flood, sending invoices for its attorney's fees to ClearOne. In order to justify the defense costs, SCM provided ClearOne with information regarding the basis of its fees. See, e.g., id. at 97–99, 110–14.

Initially, ClearOne paid SCM's invoices as they became due. Id. at 198. However, in October 2007, ClearOne requested detailed information pertaining to Ms. Flood's representation. Id. at 31, 95. SCM had recently learned that ClearOne was sharing materials prepared under the Joint Defense Agreement with the government. Accordingly, SCM refused ClearOne's request, explaining that it would not "disclose work product and attorney-client information." Id. at 102. SCM did, however, assure ClearOne that it had "[c]ost-saving devices [] in place." Id. at 99. Specifically, SCM worked with Ms. Strohm's lawyers to cull through the vast quantity of discovery. Id. SCM also availed itself of Ms. Flood's "intimate knowledge concerning many of the documents." Id.

During preparation for trial, SCM contacted ClearOne about utilizing a mock trial "for the purpose of identifying key issues and strategies for presentation to the jury." Id. at 93. In response, ClearOne asked why the criminal case could not be settled. Id. at 107. SCM then sent ClearOne an email,

without copying Ms. Flood, explaining that mock trials are a "very effective way to get parties in a lawsuit to see things the way they really are," and frequently lead to settlement. Id.

Nevertheless, ClearOne refused to pay for the mock trial. Id. at 108. In response, SCM told ClearOne that the refusal was an "improper interference with [SCM's] obligation to effectively defend charges against [Ms. Flood]." Id. SCM also stated that it had only asked ClearOne "as a courtesy," and emphasized that "ClearOne and its officers [were] in no position to make decisions about the defense . . . or to veto decisions made by the defense lawyers." Id. ClearOne replied that it "ha[d] not and d[id] not intend to substitute its decisions for those of defense counsel." Id. at 115. But ClearOne did advise that it would continue supervising Ms. Flood's legal expenses to ensure their reasonableness. Id.

In April 2008, ClearOne ceased paying Ms. Flood's attorney's fees. Id. at 119, 353. Ms. Flood, represented by SCM, brought suit against ClearOne to compel payment. Id. at 478–79. Although SCM represented Ms. Flood in both the civil and criminal matters, it employed different lead counsel. Id. at 195–96.

Initially, SCM and Ms. Strohm's counsel obtained a continuance of over three months in the criminal trial. Id. at 166. However, the court indicated that it would be unwilling to grant another continuance. Id. at 193–94, 298–99. The court advised that if counsel for Ms. Flood or Ms. Strohm wished to withdraw, they needed to do so promptly. The court also discussed the possibility of

- 5 -

appointing counsel for Ms. Flood under the Criminal Justice Act (CJA), or converting current counsel to a CJA appointment. Id. at 159–60, 166–67, 193–95. However, the court did not appoint counsel, SCM did not withdraw, and Ms. Flood did not seek a change in representation. Thus, SCM continued to represent Ms. Flood in the criminal proceedings.

In January 2009, the court granted a preliminary injunction against ClearOne in the civil suit. ClearOne was ordered to pay Ms. Flood's attorney's fees, with 40% to be placed in escrow pending the court's review for reasonableness. Id. at 350–62. ClearOne initially complied with the injunction. Id. at 482. However, after Ms. Flood's trial began, ClearOne stopped making payments. Id. at 41, 482. In response, SCM filed a motion on Ms. Flood's behalf to compel payment. Id. Shortly before the criminal trial concluded, ClearOne complied with the injunction by making another payment. Id. at 41, 483.

During Ms. Flood's criminal trial, the court made several comments, outside the jury's presence, related to SCM's unpreparedness and disorganization. See, e.g., id. at 376–78. After a three-week trial, the jury found Ms. Flood guilty on all counts. Id. at 455. ClearOne then sought $17 million in restitution, which the court denied based on ClearOne's alleged involvement in the fraud. Id. at 3873.

Ms. Flood proceeded to file a motion for acquittal and a motion to vacate, both of which were denied. Id. at 456–58. Ms. Flood then changed counsel and

filed a second motion to vacate, claiming she received ineffective assistance of counsel. Id. at 458–61. The court denied the second motion as untimely, as well as on the merits. On appeal, we affirmed the denial of the post-trial motions but remanded with instructions for the district court to vacate its ruling on the merits of the ineffective assistance claim. United States v. Flood, 635 F.3d 1255, 1261 (10th Cir. 2011). We envisioned that Ms. Flood could bring her claim in a § 2255 proceeding with a properly developed record.

Ms. Flood then filed her § 2255 motion, arguing that she received ineffective assistance of counsel because her attorneys labored under a conflict of interest. App. 6–52. She subsequently filed motions for an evidentiary hearing, discovery, and judicial notice. The district court denied her § 2255 motion on the merits, holding Ms. Flood had failed to establish that an actual conflict adversely affected her representation. Flood v. United States, No. 2:11-CV-960, 2012 WL 2025255, at *10 (D. Utah June 5, 2012). The court also denied Ms. Flood's remaining motions. Id. at *10 n.3.

Ms. Flood appeals, arguing that: 1) conflicts of interest adversely affected her trial counsel's performance; 2) the district court abused its discretion by denying her motions for an evidentiary hearing, discovery, and judicial notice; and 3) she was denied effective assistance of counsel under Strickland. We granted a COA limited to issues one and two. United States v. Flood, No. 12-4094 (10th Cir. Nov. 5, 2012).

<u>Discussion</u>

The district court denied Ms. Flood's § 2255 motion without an evidentiary hearing, therefore our review is de novo. <u>United States v. Rushin</u>, 642 F.3d 1299, 1302 (10th Cir. 2001).

A.    <u>Did SCM Labor Under an Actual Conflict of Interest?</u>

The Sixth Amendment guarantees the "right to representation that is free from conflicts of interest." <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981). Generally, to prevail on an ineffective assistance claim the defendant must show that her counsel's performance was deficient and that prejudice resulted. <u>Strickland v. Washington</u>, 466 U.S. 668, 692 (1984). But where counsel is burdened by an actual conflict, "[n]o further showing of prejudice is necessary." <u>United States v. Bowie</u>, 892 F.2d 1494, 1500 (10th Cir. 1990) (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 349–50 (1980)). However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [her] lawyer's performance.'" <u>Strickland</u>, 466 U.S. at 692 (quoting <u>Cuyler</u>, 446 U.S. at 350, 348).[1]

_____

[1] As the government notes, the Supreme Court has never applied <u>Cuyler</u>'s presumption of prejudice outside the context of a multiple representation claim. <u>See</u> <u>Mickens v. Taylor</u>, 535 U.S. 162, 174–76 (2002). However, this circuit has applied the <u>Cuyler</u> standard to a conflict-of-interest claim based upon a third-party fee arrangement. <u>See</u> <u>United States v. Alvarez</u>, 137 F.3d 1249, 1252 (10th Cir. 1998). Thus, we apply the <u>Cuyler</u> standard here.

- 8 -

Ms. Flood's motion contains two different conflict-of-interest theories. First, she claims the fee arrangement caused SCM to serve ClearOne's conflicting interests. Second, she claims SCM served its own financial interests to the detriment of her defense. We address each theory in turn.

1.      Did SCM Serve ClearOne's Conflicting Interests?

The Supreme Court has warned of "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party." Wood, 450 U.S. at 268–69. However, a third-party fee arrangement does not automatically create a conflict of interest. See United States v. Alvarez, 137 F.3d 1249, 1252 (10th Cir. 1998); see also Cuyler, 446 U.S. at 350. "An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." Workman v. Mullin, 342 F.3d 1100, 1107 (10th Cir. 2003) (quotation omitted). In other words, there must be more than a potential conflict of interest or "a mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). To prevail, the defendant "has the burden of showing specific instances to support [her] claim of actual conflict of interest." Edens v. Hannigan, 87 F.3d 1109, 1114 (10th Cir. 1996); accord Castro v. Ward, 138 F.3d 810, 821 (10th Cir. 1998).

Ms. Flood has provided ample evidence that ClearOne had a conflicting interest (e.g., her conviction entitled ClearOne to recoup roughly $3 million in attorney's fees, and also provided ClearOne with an opportunity to seek

restitution).  However, ClearOne's conflict of interest cannot be imputed to SCM merely by virtue of the fee arrangement.  Rather, Ms. Flood must show that her lawyers labored under an actual conflict.  <u>See, e.g.</u>, <u>Alvarez</u>, 137 F.3d at 1252; <u>United States v. Tobon-Hernandez</u>, 845 F.2d 277, 281 (11th Cir. 1988).  Such a showing requires specific instances where SCM served ClearOne's conflicting interests.  <u>See</u> <u>Mullin</u>, 342 F.3d at 1107; <u>see also</u> <u>United States v. Cabello</u>, 188 F.3d 871, 876 (7th Cir. 1999).

Ms. Flood cites several events as evidence that SCM labored under an actual conflict: 1) SCM's decision not to withdraw from the Joint Defense Agreement; 2) SCM's decision to delegate pretrial work to Ms. Strohm's attorneys; 3) SCM's correspondence with ClearOne regarding the mock trial; 4) SCM's decision to forgo alternative defense theories that could have exposed ClearOne to liability; and 5) SCM's overall effort to minimize costs.

    a.  <u>The Joint Defense Agreement</u>

Ms. Flood has not shown that SCM served ClearOne's adverse interests by participating in the Joint Defense Agreement.  Instead, the record shows SCM consistently recognized and respected its duty of loyalty to Ms. Flood—not ClearOne.  Upon learning that ClearOne had shared information with the government,[2] SCM refused ClearOne's requests for detailed information regarding

---

[2]  Ms. Flood makes much of the fact that SCM found material prepared by ClearOne under the Joint Defense Agreement in the government's discovery.  But she has not indicated whether the material even pertained to the charges against

Ms. Flood's representation.  See App. 102, 259–60.  Although SCM did not formally withdraw from the Joint Defense Agreement, the firm refused to engage in conduct that could undermine Ms. Flood's defense.

Further, Ms. Flood has not provided a plausible explanation, based in fact, of how SCM's participation in the Joint Defense Agreement adversely affected her defense.  While SCM did continue providing limited information to ClearOne under the Joint Defense Agreement, there is no indication that SCM revealed anything even potentially incriminating or sensitive.  Rather, SCM's disclosures concerned the firm's financial statements.  Moreover, SCM shared the information to obtain funding for Ms. Flood's defense.  In short, Ms. Flood has offered no evidence that would suggest SCM served ClearOne's interests instead of hers.

      b.      SCM's Decision to Delegate Work to Ms. Strohm's Attorneys

Similarly, SCM's decision to delegate work to Ms. Strohm's attorneys does not establish an actual conflict of interest.  The trial transcript shows that Ms. Strohm's defense theory accorded with Ms. Flood's; in other words, any conflict between the defendants was merely theoretical.  See United States v. Burney, 756 F.2d 787, 792 (10th Cir. 1985); see also Burger v. Kemp, 483 U.S. 776, 786–87 (1987).  Given the financial and temporal constraints that inhere in all litigation,

---

her.  In any event, it was ClearOne who allegedly breached the Joint Defense Agreement—not SCM.

it made practical sense for SCM to share the workload. SCM relied on Ms. Strohm's attorneys to help "cull through and organize the massive discovery information." If anything, the joint effort likely maximized SCM's ability to prepare for a lengthy and complex trial, as did SCM's decision to utilize Ms. Flood's "intimate knowledge" concerning many of the documents. See Mullin, 342 F.3d at 1107. In short, we find neither a conflict of interest nor an adverse effect.

>        c.      SCM's Correspondence with ClearOne Regarding the Mock Trial

Ms. Flood also claims that SCM used the mock trial "in an effort to persuade her to plead guilty and save [ClearOne] money." App. 34. In support, Ms. Flood points to correspondence between SCM and ClearOne, sent without her knowledge, in which SCM stated that a mock trial "is a very effective way to get parties in a lawsuit to see things the way they really are," and "[f]requently . . . will result in a settlement." Id. at 107. According to Ms. Flood, these statements demonstrate SCM was promoting ClearOne's interest in settling the case instead of her interest in proceeding to trial. We disagree.

First, it is widely understood, at least among litigators, that a mock trial can provide insight into the likely outcome at trial, thereby inducing settlement. This statement of fact, alone, does not establish an actual conflict. Further, had the mock trial revealed fatal weaknesses in the trial strategy, it might well have been

in *Ms. Flood's* best interest to reach a settlement.  Indeed, it appears Ms. Flood recognized the value of a mock trial, electing to pay out of her own pocket when ClearOne refused to cover the cost.

Finally, SCM's statements must be read in context.  There is no evidence that SCM pursued a mock trial in order to promote ClearOne's conflicting interests.  On the contrary, when ClearOne refused to pay for the mock trial, SCM vigorously asserted its loyalty to Ms. Flood, emphasizing that it had only consulted ClearOne "as a courtesy, not because [SCM] thought [ClearOne] ha[d] a say in this decision."  Id. at 108.  At the direction of Ms. Flood—not ClearOne—SCM went forward with the mock trial.  Thus, SCM's correspondence with ClearOne cannot reasonably be understood as promoting an interest adverse to Ms. Flood's.

### d.     SCM's Alleged Decision to Forgo Alternative Defense Theories

According to Ms. Flood, SCM also served ClearOne's interests by avoiding defense theories that could have exposed ClearOne to criminal liability.  To support her claim, Ms. Flood cites the government's allegation at sentencing that ClearOne had been involved in the fraud and was therefore ineligible for restitution.  Id. at 3873.  However, Ms. Flood has not identified a viable, alternative strategy.  See Bowie, 892 F.2d at 1500; see also Noe v. United States, 601 F.3d 784, 790–91 (8th Cir. 2010) (rejecting conflict of interest claim where

- 13 -

defendant had "not shown that [alternative strategies] were objectively reasonable"). Moreover, she has not shown that SCM relinquished that strategy "for the benefit of another party." Alvarez, 137 F.3d at 1252 (quotation omitted); see United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985) (holding that defendant "fail[ed] to allege any strategy which defense counsel used or failed to use because [a third party] had agreed to pay the legal fees"). Without more, the conflict is "purely speculative and hypothetical and does not rise to the required level of actual conflict." Burney, 756 F.2d at 792.

### e. SCM's Overall Effort to Minimize Costs

Finally, Ms. Flood cites SCM's overall effort to minimize costs as evidence that the firm "served ClearOne's conflicting interests." Aplt. Br. 23. Essentially, Ms. Flood argues she was not obligated to pay SCM's fees and, therefore, had no interest in minimizing costs. According to Ms. Flood, "[t]he record unambiguously reflects that trial counsel were employed by, paid by, and had a contract with ClearOne." App. 553. We disagree.

The district court in the civil case concluded that "[t]he obligation to pay [SCM] was Flood's. ClearOne's duty was to indemnify and advance funds on behalf of Flood." Flood v. ClearOne Commn'cns, Inc., No. 2:08-CV-00631, 2012 WL 192709, at *8 (D. Utah Jan. 23, 2012). The court reached this conclusion after considering the retainer Ms. Flood signed with SCM in relation to the SEC matter, the Separation Agreement, and the parties' course of conduct.

- 14 -

The record supports this conclusion: it was Ms. Flood's obligation to pay SCM for the services rendered. Accordingly, Ms. Flood had an interest in reasonable attorney's fees. If convicted, Ms. Flood would potentially be responsible for the amounts ClearOne advanced. Even if acquitted, Ms. Flood remained liable under the Separation Agreement for any unreasonable fees. Therefore, the ultimate goal SCM was serving—maintaining reasonable attorney's fees—did not conflict with Ms. Flood's interests.

2.     Did SCM's Own Financial Interests Create an Actual Conflict?

Ms. Flood also argues that she was denied effective assistance of counsel because SCM served its financial interests at the expense of her defense. Ms. Flood focuses on two instances where she believes SCM placed its own interests ahead of hers: 1) SCM's decision to file the civil suit; and 2) SCM's decision to proceed in the criminal trial without necessary funding.

a.     The Civil Suit

Ms. Flood maintains that SCM instigated the civil suit in order to further its financial interests, to the detriment of her defense. However, SCM actively represented *Ms. Flood's* interests in the suit against ClearOne. Cf. United States v. O'Neil, 118 F.3d 65, 71–72 (2d Cir. 1997) (defense attorney did not have conflict of interest despite having sued his client to recover unpaid attorney's fees). As Ms. Flood explained, "[s]he paid the equivalent of roughly four million dollars under the [Separation Agreement] for ClearOne's commitment to pay . . .

SCM . . . giving up her most valuable resource that could otherwise have been used to defend herself." App. 551 (quotation omitted). In other words, Ms. Flood had specifically negotiated for—and ultimately depended upon—ClearOne's commitment to pay her attorney's fees. Therefore, to the extent SCM also benefitted from the civil suit, the firm's interest dovetailed with Ms. Flood's interest in enforcing ClearOne's indemnification obligation.[3]

Nor was SCM acting in its own interest when it decided not to hire experts and fly in extra witnesses to testify at Ms. Flood's criminal trial. While SCM had an ethical duty to mount a vigorous defense, Ms. Flood has not shown that SCM was under a duty (contractual or otherwise) to advance costs for any extra outside services. Absent such a duty, we cannot say the fee dispute created an actual conflict.

Simply put, the civil suit did not create a conflict of interest between SCM and Ms. Flood. Further, she has failed to link SCM's deficiencies at trial to any conflict of interest. SCM admits it was forced to divert resources from Ms. Flood's defense to the civil litigation. But we see no reason to attribute this predicament to SCM's financial self-interest, rather than ClearOne's breach of the

---

[3] If anything, Ms. Flood received a more direct benefit from the civil suit. The injunction required ClearOne to pay "100% of all Ms. Flood's costs and legal fees." App. 361. On the other hand, SCM received only 60% of its fees, with 40% held in escrow pending a review for reasonableness. Id. at 361–62. In fact, after Ms. Flood was convicted, the district court ordered a return of the escrow funds to ClearOne, forcing SCM to seek recovery from Ms. Flood alone. See Flood v. ClearOne, 2012 WL 192709, at *9.

Separation Agreement.  See Burney, 756 F.2d at 792; see also Caderno v. United States, 256 F.3d 1213, 1218–19 (11th Cir. 2001).

b.     The Criminal Case

Ms. Flood also argues that SCM's choice to proceed with the criminal trial "served [the firm's] financial interests but harmed [her] interests in a proper defense."  Aplt. R. Br. 15.  According to Ms. Flood, SCM should have sought another continuance, moved to withdraw, or converted to a CJA appointment until the firm "obtain[ed] funding essential" for her defense.  Aplt. Br. 27.  We disagree.

First, Ms. Flood has not shown that it was SCM's decision, rather than her own, to proceed with the trial.  Second, we doubt whether the court would have granted a continuance or motion to withdraw in the weeks leading up to trial. See, e.g., App. 193–94, 298–99.  It is similarly unclear whether Ms. Flood would have qualified for appointed counsel under the CJA.  See id. at 166–67, 193–95.

More important, Ms. Flood *had* obtained essential funding before the criminal trial began on February 2, 2009.  Pursuant to the preliminary injunction, ClearOne was required to pay all of Ms. Flood's attorney's fees.  Further, ClearOne appeared willing and able to comply with the court's order.  For example, ClearOne paid most of the outstanding attorney's fees on November

22—less than two weeks before the criminal trial began.[4]

Finally, it is undisputed that Ms. Flood kept SCM as her counsel, never seeking to substitute counsel or convert her representation to a CJA appointment. Instead, the record reflects that Ms. Flood believed SCM had the "expertise needed for her complex white collar case." App. 561. As Ms. Flood explained, she "paid roughly four million dollars under the [Separation Agreement] for ClearOne's commitment to pay [SCM] to represent her." Id. It is therefore unsurprising that she would choose to retain the benefit of her bargain, especially in light of the preliminary injunction. In short, we simply cannot find a conflict of interest based on these facts.

B.     Did the Trial Court Abuse Its Discretion by Denying Ms. Flood's Motions for an Evidentiary Hearing, Discovery, and Judicial Notice?

We review the district court's denial of an evidentiary hearing for abuse of discretion. Hooks v. Workman, 606 F.3d 715, 731 (10th Cir. 2010). We apply the same standard of review to the denial of Ms. Flood's request for discovery, see Curtis v. Chester, 626 F.3d 540, 549 (10th Cir. 2010), and the denial of her motion for judicial notice, see O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224 (10th Cir. 2007).

_____

[4] Although ClearOne violated the injunction in the midst of Ms. Flood's trial, the fact remains that, in the period leading up to trial, Ms. Flood appeared to have the necessary funding for her defense. We also note the possibility that the preliminary injunction precluded Ms. Flood from qualifying for appointed counsel under the CJA.

Section 2255(b) requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Having carefully reviewed the entire record, including the trial transcript, we find no abuse of discretion in denying an evidentiary hearing. SCM did not labor under an actual conflict and that forecloses Ms. Flood's claim. See Alvarez, 137 F.3d at 1252; Burney, 756 F.2d at 794. Nor do we find any abuse of discretion in the district court's denial of Ms. Flood's motions for discovery and judicial notice.

C.      Expanding the COA.

Finally, we decline to expand the COA to include Ms. Flood's Strickland claim of ineffective assistance. Ms. Flood failed to adequately raise the issue below, and we therefore decline to consider it for the first time on appeal. See Parker v. Scott, 394 F.3d 1302, 1327 (10th Cir. 2005).[5]

Ms. Flood argues that her habeas petition did, in fact, raise a Strickland claim. In support, she cites her request for relief from "ClearOne's interference with and the violation of [her] rights to conflict-free counsel of choice and to effective assistance in defending against criminal charges."[6] App. 50. This

---

[5] For the same reason, we refuse to consider Ms. Flood's additional "claim of Government intrusion into her Sixth Amendment right to counsel, and related violation of her Fifth and Fourteenth Amendment Rights." Aplt. Br. 49.

[6] She also cites a portion of her motion that states: "Ground one: Violation of and Interference with Flood's Fifth, Sixth and Fourteenth Amendment rights to guidance and effective assistance of, and relationship with conflict-free counsel

passing reference to "effective assistance" is inadequate to state a regular Strickland claim given that the motion and supporting memoranda focus exclusively on a conflict-of-interest theory of ineffective assistance. The import of Ms. Flood's position was not traditional prejudice—a requisite under Strickland. Instead, she argued that SCM's conflict adversely affected her representation. In other words, her petition was tailored to Cuyler's less demanding standard. We therefore decline to expand the COA.

AFFIRMED. Ms. Flood's motion for judicial notice of court records is denied as unnecessary.

---

of choice, to procedural and substantive due process, and to confront and defend against criminal charges in a fair trial." App. 9.