**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JEROME ERSLAND,

     Petitioner - Appellant,

v.

CARL BEAR, Warden, Joseph Harp
Correctional Center,

     Respondent - Appellee.

No. 17-6255
(D.C. No. 5:15-CV-00902-HE)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **EID**, **KELLY**, and **O'BRIEN**, Circuit Judges.
_____

An Oklahoma jury convicted Jerome Ersland of first-degree murder, and he was

sentenced to life in prison. After exhausting his state-court remedies, he applied for

28 U.S.C. § 2254 habeas relief in federal district court. The district court denied his

application. To appeal from that denial, he requires a certificate of appealability (COA).

*See id.* § 2253(c)(1)(A). We now deny him a COA and dismiss this appeal.

**BACKGROUND**

Mr. Ersland shot and killed Antwun Parker during an armed robbery of the

Reliable Pharmacy in Oklahoma City, where Mr. Ersland worked as a pharmacist. The

---

     * This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

state conceded that Mr. Ersland's first shot, which struck Mr. Parker in the forehead and thwarted the robbery, was legal. But less than a minute later, Mr. Ersland shot Mr. Parker five more times. This resulted in his conviction for first-degree murder. In its decision on direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) summarized the facts as follows:

> [T]eenagers . . . Antwun Parker and Jevontai Ingram . . . entered the pharmacy at about 5:40 p.m., asking for drugs and money. Ingram had a pistol and Parker, who was unarmed, blocked the front door. . . . When Parker and Ingram came through the door, [the clerks] ran into the back. Ersland took a Taurus Judge revolver, loaded alternately with .410 shotgun shells and .45 pistol shells, from the counter. He shot Parker in the forehead with a shotgun shell. Parker fell unconscious while Ingram ran out. Ersland followed Ingram, shot at Ingram until the revolver was empty, then returned to the store. Ersland stepped over Parker, took a .380 semi-automatic Kel-Tec pistol from a drawer, and shot Parker five times in the lower chest. The parties stipulated that the first shot to Parker's head would have resulted in loss of consciousness but was not immediately fatal, although it could have eventually caused death. The five final shots hit Parker's thoracic aorta, lungs, liver, spleen, pancreas, stomach and intestine, resulting in significant bleeding into his body cavity. The cause of death was multiple gunshot wounds to the head and abdomen. The incident was recorded on store security videotape. Less than a minute elapsed between the teenagers' entrance and the final shot.

Aplt. App., Vol. I at 23-24.

The OCCA affirmed Mr. Ersland's conviction on direct appeal. He then sought post-conviction relief (PCR) in state district court. The state district court denied his application for PCR. He appealed to the OCCA, which affirmed the denial. The OCCA also denied his request for an evidentiary hearing.

He then filed his § 2254 application. The district court denied habeas relief and denied him a COA.

2

**DISCUSSION**

Mr. Ersland has not renewed his request for a COA in this court. But he has filed an opening brief, which we will construe as a request for a COA. *See* 10th Cir. R. 22.1(A).

A COA may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this burden, Mr. Ersland must show "that reasonable jurists could debate whether (or, for that matter, agree that) the [application] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Where a claim was adjudicated on the merits in state court, as Mr. Ersland's claims were, the state court's decision is entitled to deference unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2).

**1. New Evidence Claim**

Mr. Ersland's new evidence claim was based primarily on his post-trial recollection, developed with assistance from his new counsel and supported by affidavits from other witnesses, that he always carried a gun in his pocket when on duty at the pharmacy. He now recalled it was this weapon—which he pulled from his pocket, not out of a drawer—that he used to fire the final five shots. He claimed he had forgotten or repressed these facts as the result of his post-traumatic stress disorder (PTSD) and

3

asserted that the failure to present them at trial had denied him a fair trial. The OCCA held this was not new evidence and that there was not a reasonable probability that it would have changed the result if presented at trial.

The district court discerned Mr. Ersland's federal constitutional claim to be that the absence of evidence at trial concerning the second gun violated his right to present a complete defense. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (citations and internal quotation marks omitted)). This right is violated when courts exclude evidence required by the defense to support its theory of the case. *See id.* The district court concluded the evidence concerning the location of the second gun was information Mr. Ersland himself possessed but allegedly did not remember until sometime after his trial and direct appeal. It is not reasonably debatable, under these circumstances, that Mr. Ersland failed to show that the failure to grant him a new trial or other relief violated his right to present a complete defense, as interpreted by the Supreme Court.

The district court further concluded that any alleged error was harmless. Mr. Ersland argued the new evidence negated malice aforethought, because he did not use the gun in his pocket to shoot Mr. Parker immediately upon returning to the pharmacy but instead he first went behind the counter to call 911. He argued he only shot Mr. Parker again after he heard and saw Mr. Parker move. But the district court found

4

this theory was inconsistent with a video surveillance tape, which showed Mr. Ersland walking past a phone, "opening a drawer behind the counter and pulling out the second gun." Aplt. App., Vol. I at 94. Mr. Ersland argues that the second gun in his pocket "goes to [his] state of mind" and thus the absence of this evidence must have affected the jury's assessment of malice aforethought. Aplt. Br. at 30. But he fails to rebut the district court's undisputed description of the events depicted on the video surveillance tape. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (stating that in ruling on summary judgment, court should not have relied on the plaintiff's version of events that was "utterly discredited" by the facts shown in an uncontested video recording capturing the events in question). The district court's harmless-error analysis is not reasonably debatable.

Mr. Ersland also argues that he could have presented "a compelling re-enactment video regarding his theory of the case and his state of mind." Aplt. Br. at 30. He contends the OCCA was obliged to review this video or hold an evidentiary hearing on it before determining whether the new evidence could have had a prejudicial effect at trial. Under some circumstances, failing to hold an evidentiary hearing may so affect a state court's fact-finding process that it calls into question the reasonableness of its factual determinations. *See Hurles v. Ryan*, 752 F.3d 768, 790-91 (9th Cir. 2014). But not here. In an affidavit in support of his PCR application Mr. Ersland thoroughly described the specific facts he now remembered due to his attorney's investigation and re-creation of the shooting:

(1) that the reason he shot . . . Parker and not the second intruder is that a display case was in the way and he didn't have a clear shot at the second man; (2) that he always kept his .380 handgun in his right pants pocket (the surveillance camera shows him coming back into the store with his hand in his pocket), and he had his hand on his gun as he came back into the pharmacy after chasing the second intruder; (3) but as he was trying to dial 911 he heard movement from Parker and at that point, he pulled the gun out of his pocket and walked back towards Parker; (4) that because of the cash register and the height of the counter he could not view Parker's movements from behind the counter so he had to step to the far east of that room; [and] (5) that as he moved to the east he saw Parker's hand moving toward a backpack, which Ersland thought contained a weapon.

Aplt. App., Vol. II at 399; *see also id.* at 410.[1]

The OCCA considered Mr. Ersland's affidavit along with the other evidence he submitted in reaching its conclusion that he had failed to establish that "there is a reasonable probability that it would have changed the trial result." *Id.* Vol. I at 69. Mr. Ersland has failed to show this determination, even if reached without a review of the re-creation video or an evidentiary hearing, was unreasonable.

In discounting the effect of Mr. Ersland's alleged new evidence, the district court also cited his general lack of credibility. Mr. Ersland complains that in doing so, the

---

[1] In his state district court application for PCR, Mr. Ersland also argued the investigation resulting in the re-creation had established that he "had . . . felt a 'whizzing by' his head during the incident, but that it had been a ricochet of a bullet from his own gun, and [a] gunshot sound [he heard] was explained by [a] trash can breaking." Aplt. App., Vol. II at 399. But for whatever reason, he did not include these alleged new facts as part of the ineffective assistance claim he presented to the OCCA, *see id.* Vol. II at 444-46, and the OCCA did not specifically discuss them, *see id.* Vol. I at 68-69. Given this omission, the district court did not err in refusing to consider this aspect of his claim. *See id.* at 91 n.3 (district court's order characterizing reference to "Gunfire from intruders" and PTSD evidence as "an explanation of how the evidence regarding the location of the second gun was discovered and why it was not discovered earlier, *not as additional pieces of his newly discovered evidence claim*" (emphasis added)).

district court (1) made improper use of evidence that was admitted at trial solely to show his consciousness of guilt, and (2) cited evidence of his alleged pretrial prevarications, which he claims resulted from his mental impairments. Mr. Ersland's limited citations to the record are insufficient to give us a complete picture of the evidence admitted at trial concerning his prior inconsistent statements and credibility. *See* Aplt. Br. at 32. His citations to his experts' opinions about his cognitive processing deficiencies and PTSD fall short of explaining away the evidence the district court cited. But in any event, even if we were to entirely discount the district court's statements about credibility, its conclusion that the OCCA reasonably denied Mr. Ersland relief on his new evidence claim is not reasonably debatable. Reasonable jurists could not disagree that the absence of this evidence at trial did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). We deny a COA concerning this claim.

### 2. Ineffective Assistance of Counsel

Mr. Ersland also asserted his trial counsel was ineffective in failing to discover his new evidence and present it at trial, and his appellate counsel was ineffective for failing to raise the claim on direct appeal. These ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which required Mr. Ersland to show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense," *id.* at 687.

The district court determined that that OCCA's conclusion that Mr. Ersland had failed to demonstrate *Strickland*'s prejudice element was not unreasonable. That element

7

requires a showing that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Id.* at 694. The district court concluded the OCCA reasonably determined that even if the new evidence had been introduced at trial there was no reasonable probability that the outcome of the trial would have been different. And because the ineffective assistance of trial counsel claim lacked merit, appellate counsel was not ineffective in failing to raise it on direct appeal. Because reasonable jurists could not disagree, we deny a COA concerning this claim.[2]

---

[2] Mr. Ersland's ineffective assistance claim has undergone a significant metamorphosis since the district court proceedings. His argument to the district court was that his defense was prejudiced by trial counsel's failure to discover and present certain later-remembered facts about what he saw, heard, and did during the incident at the pharmacy. He argued that if his attorney had presented this evidence concerning his perceptions and actions, it would have provided the jury with valuable information about his state of mind that might have affected the result at trial.

Mr. Ersland now complains about a plethora of other actions that trial counsel took or failed to take that prevented the jury from understanding his mental state during the incident. He complains counsel (1) contested "to a level of absurdity" the state's motion to have him undergo a pretrial evaluation concerning his mental competency, Aplt. Br. at 20; (2) failed to inform his doctors that his son suffered from Autism Spectrum Disorder (Asperger's), a heritable condition; (3) failed to provide expert reports to the state as ordered, then "cowered at hypothetical sanctions they wholly invented in an attempt to excuse their failure to procure expert testimony on Mr. Ersland's specific state of mind," *id.* at 22; (4) failed to use evidence about his cognitive deficits to explain his prior inconsistent statements and actions, *see id.* at 25-26; and (5) failed to rebut incompetent testimony about his state of mind from a blood-spatter expert, *see id.* at 26-27.

To the extent his arguments raise new contentions about prejudice that were not presented to the district court, we decline to consider them. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) (we do not generally consider new arguments in a habeas appeal). To the extent he attempts to raise new, freestanding claims of ineffective assistance of counsel, we will not grant a COA on these claims. *Cf. United*
(continued)

8

Mr. Ersland's request for a COA is denied.  This matter is dismissed.

Entered for the Court


Allison H. Eid
Circuit Judge

---

*States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013) (in determining whether to expand a COA, we limit our consideration to those claims properly presented to the district court).